HENRY KELLEY, Et Al., Appellants, *v.* CLARK
COUNTY, Et Al., Respondents.

No. 3350

July 2, 1942.                    127 P. (2d) 221.

*Harold M. Morse* and *Madison B. Graves,* both of Las Vegas, for Appellants.

*Roland H. Wiley,* District Attorney, and *V. Gray Gubler* and *Wm. J. Hatton,* Deputy District Attorneys, all of Las Vegas, for Respondents.

## OPINION

By the Court, DUCKER, C. J.:

On April 10, 1941, the board of county commissioners of Clark County, one of the defendants, made an order that the district attorney of the county notify all persons responsible for maintaining a nuisance in block 16, Clark's Las Vegas townsite, to abate the same in accordance with section 2043 Nevada Compiled Laws 1929. Pursuant thereto the district attorney wrote to each of the plaintiffs on April 12, 1941, to abate a public nuisance in said block 16, on or before the 17th day of April, and stating further upon their failure to do so he would adopt such proceedings against them, and each of them, as might be necessary in the premises. Whereupon plaintiffs filed a complaint for an injunction against defendants. A preliminary injunction was granted. Defendants answered alleging that plaintiffs were engaged in keeping and maintaining bawdy houses in block 16 of Clark's Las Vegas townsite in the city of Las Vegas, Clark County, Nevada, and permitting

numerous persons to reside or resort therein for the purpose of plying their vocation.

For a second and separate defense it is alleged that plaintiffs are now and were at the time of filing the complaint, keeping houses of ill-fame and renting rooms therein to numerous unknown persons for purposes of prostitution, and that said houses of ill-fame and rooms are situated within 400 yards of an established church building erected for and used for devotional services and religious worship in the city of Las Vegas, county of Clark, State of Nevada. A reply was filed. The court dismissed the injunction. Hence this appeal.

We will pass over certain technical contentions and go to the crux of the case. The main question for determination is whether the charter provision of the city of Las Vegas empowering its board of commissioners, "within said city and within one mile outside of the city limits to regulate, prohibit, and prescribe the location of and suppress all houses of ill-fame, * * * bawdy-houses, * * *." (Stats. 1939, c. 155, p. 216, sec. 10, subd. 10) supersedes the power and duty of the board of county commissioners to abate any of such houses as a nuisance within the limits of the county. Section 2043 N. C. L. reads:

"Whenever, in any county of this state, the county commissioners of said county shall have knowledge, either by personal observation, complaint in writing, or other satisfactory evidence, that a nuisance exists within the limits of said county, as defined by section 3346 of the Compiled Laws of Nevada (sec. 9051, post) it shall be the duty of said board of county commissioners to take immediate action by entering and recording an order in the minutes of said board, directing the district attorney to notify the person or persons responsible for such nuisance to abate the same, and in case the said notice is not obeyed within five days from and after such service, the said district attorney is hereby directed and empowered to bring action in a court of justice to

enforce or abate the same, together with the recovery of damages and costs. Said action shall be under the control of the board of county commissioners in like manner as other suits to which the county is a party, and all necessary expenses incurred in conducting said action shall be paid out of the general fund of said county as other claims are paid. Failure on the part of either county commissioners or district attorney to enforce the provisions of this act shall work forfeiture of office."

Section 9051 N. C. L. referred to in the foregoing statute provides: "Anything which is injurious to health, or indecent and offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

Section 10193 N. C. L. provides: "It shall be unlawful for any owner, or agent of any owner, or any other person to keep any house of ill-fame, or to let or rent to any person whomsoever, for any length of time whatever, to be kept or used as a house of ill-fame, or resort for the purposes of prostitution, any house, room or structure situated within four hundred yards of any school house or school room used by any public or common school in the State of Nevada, or within four hundred yards of any church edifice, building or structure erected for and used for devotional services or religious worship in this state."

Section 10195 N. C. L. makes a violation of any of the provisions of the foregoing section a misdemeanor punishable by fine or imprisonment or both.

Section 10244 N. C. L. as amended by Statutes of 1941, c. 57, at page 65, declares a public nuisance to be a crime against the order and economy of the state, and

defines one class thereof to be every act unlawfully done or every omission to perform a duty, which act or omission shall offend public decency.

The district attorney contends that he may press the action for abatement on the ground of public nuisance comprehended by any of the foregoing sections. Counsel for plaintiffs insist that the foregoing provision of the city charter and other provisions therein as to nuisances, occupy the entire field of general legislation on the subject within the prescribed city limits, to the exclusion of the state. Our view does not correspond with this.

■ The suppression of nuisances injurious to public health of morals is among the most important duties of government. Phalen v. Commonwealth of Virginia, 8 How. 163, 12 L. Ed. 1030; 39 Am. Jur. 292. It is a governmental power as distinguished from matters of purely local concern. It is thus characterized in Stone v. Mississippi, 101 U. S. 814, 819, 25 L. Ed. 1079:

"No legislature can bargain away the public health or the public morals. The people themselves cannot do it, much less their servants. The supervision of both these subjects of governmental power is continuing in its nature, and they are to be dealt with as the special exigencies of the moment may require. Government is organized with a view to their preservation, and cannot divest itself of the power to provide for them. For this purpose the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself."

See New Orleans Gas-Light Co. v. Louisiana Light, Etc., Co., 115 U. S. 650, 667, 6 S. Ct. 252, 29 L. Ed. 516, where the above concept is approved.

This court also approved it and held accordingly in Ex Parte Ah Pah, 34 Nev. 283, 119 P. 770, 772. The same contention was made there as here upon facts quite similar, that the delegation by the legislature to the city of Reno of the right to regulate the locations of

houses of prostitution within its corporate limits, and ordinances adopted pursuant thereto exhausted the power of the state to legislate on the subject. And that the state law under which the petitioner was convicted in the justice court in Reno for keeping a house of ill-fame within 800 yards of a school house in Reno, was unconstitutional and void. The court held to the contrary, and citing a wealth of authority to sustain its conclusion, said:

"After a careful review of the law and the authorities bearing upon this constitutional objection interposed by petitioner, we believe, contrary to petitioner's contention in this respect, that the doctrine is overwhelmingly maintained that the legislative departments of our government can never divest the government itself of the inherent right at all times under the police power vested in it under the Constitutions, both federal and state, of enacting any legislation which it may deem wise and just for the betterment and preservation of the public health, safety, and morals."

■ The state, for the reasons given, cannot relinquish all authority in such matters. If the contention of plaintiffs that the state has abdicated all authority were allowed, it would, as stated in State v. Linn, 49 Okl. 526, 153 P. 826, 830, Ann. Cas. 1918B, 139, destroy "the uniformity and efficiency of the police power of the state, leave these matters subject to the sole management of the local authorities, and would permit a condition to exist in a city with such charter entirely different from and at variance with the conditions in other parts of the state; and if the officers of a city which has adopted a charter are not in sympathy with the enforcement of such laws, or other laws of like character, were the enforcement of said laws left entirely in their hands, it is easy to see that such laws, or indeed any law, might become a dead letter, and their enforcement a farce, and wholesale violations thereof might occur with the knowledge and consent of the city officials."

■ In the above case it was held that the laws against gambling and prostitution are general and intended to operate throughout the entire state, and such statutes are public regulations necessary for the maintenance of the public peace and good order of society, and are matters in which every citizen of the state has an interest, and are not local and confined to the municipality, and to be regulated by its charter provisions and ordinances to the exclusion of the general laws of the state upon the subject. It was further held in that case that the city might enact ordinances not inconsistent with the state laws regulating such matters (gambling and prostitution) within its territorial limits. This is a well-settled rule. Ex Parte Ah Pah, supra; Ex Parte Sloan, 47 Nev. 109, 217 P. 233; State v. Lee, 29 Minn. 445, 13 N. W. 913. In fact, it is from this source of concurrent jurisdiction between the state and municipalities in matters subject to the police power that the latter derive a delegated authority to deal with minor criminal infractions which are also punishable under state laws. The state, however, cannot surrender its sovereignty in these important duties of government.

In 1 McQuillin Municipal Corporations (2d ed.), p. 511, the rule is declared: "Touching duties which the people in the several localities owe to the state at large, it is manifest they cannot be allowed a discretionary authority to perform them or not as they may choose, for as tersely stated by Judge Cooley, 'such an authority would be wholly inconsistent with anything like regular or uniform government in the state.' "

■ It follows from what we have said that we must hold that the charter power of the city of Las Vegas to regulate, prohibit, and prescribe the location of and suppress all houses of ill-fame, bawdy houses, and other charter provisions as to nuisances, have not supplanted the authority and duty of the board of county commissioners of Clark County under the state laws, to institute and maintain abatement proceedings against plaintiffs

for maintaining the alleged nuisances within the county.

■ The argument and contentions of plaintiff's counsel have taken a wide range, but we think few other points need be discussed. They assert that defendants' sole defense to the injunction proceeding was that the county commissioners were authorized to proceed for the abatement óf the public nuisance alleged to exist in block 16 under said sec. 10193. In this regard they contend, first, that the section does not declare the acts stated to constitute such a nuisance. We are of the opinion that they are nevertheless such a nuisance. As stated in 46 C. J. 653:

"It is not necessary that the evil sought to be remedied be declared a nuisance by the statute itself, so long as the object to be attained was one that could properly be reached by the police power."

Fevold et al. v. Board of Sup'rs, 202 Iowa 1019, 210 N. W. 139. The statute deals with houses of prostitution. Such an evil has always been deemed a public nuisance. 46 C. J. 700, 701. It has been considered a nuisance per se. Idem. In Farmer v. Behmer, 9 Cal. App. 773, 100 P. 901, 903, the court said: "A house of prostitution is a nuisance per se, and is so regarded wherever situated," citing Wood on Nuisances, sec. 29.

■ The location of a house of prostitution within a short distance of a church or school would seem to aggravate rather than mitigate its deleterious effect on the public welfare. Being a nuisance it falls within the reach of county authorities to abate it by prescribed civil action. Secondly, it is insisted that because the acts stated in said section 10193 are made a crime it is not subject to such an action. This is an erroneous view. The general rule is to the contrary. 46 C. J. 762, 763. This court is committed to the general rule. See State ex rel. Edwards v. Wilson, 50 Nev. 141, 253 P. 857, 858, wherein the court said:

"Whether the maintenance of a public nuisance is or is not punishable in the law courts as a crime is an

immaterial incident so far as the preventive jurisdiction of equity is concerned, for equity ignores its criminality, and visits upon the offender no punishment as for a crime."

▉ Lastly we say that there is no merit in the contention that sec. 1231 N. C. L. limits the jurisdiction of boards of county commissioners relative to public nuisances to unincorporated towns or cities in their respective counties. Section 2043 expressly gives the boards of county commissioners authority in the premises. We said in State ex rel. Edwards v. Wilson, supra: "The statute makes it clear that the county is the real party in interest in an action brought under its provisions to abate public nuisances existing within the limits of said county."

The judgment and order dissolving the injunction should be affirmed.

It is so ordered.