## MAE CUNNINGHAM, Appellant, *v.* WASHOE COUNTY, Respondent.

No. 3557

March 7, 1949.  203 P.2d 611.

*Emerson J. Wilson,* of Reno, for Appellant.

*Harold O. Taber,* District Attorney and *Gordon R. Thompson,* Deputy District Attorney, both of Reno, for Respondent.

### OPINION

By the Court, Badt, J.:

Washoe County, a political subdivision of the State of Nevada, commenced this action in the court below to

enjoin the defendant Mae Cunningham from using premises known as No. 900 East Commercial Row, in the city of Reno, as a house of prostitution. On ex parte application of plaintiff the district court issued a temporary restraining order restraining defendant from using the premises as a house of prostitution. Defendant moved to dissolve the restraining order and dismiss the action, and has appealed from the court's order denying such motion.

The proceedings were initiated under authority of section 2043, N.C.L., quoted in full in the margin,[1] which requires the board of county commissioners of any county to direct the district attorney to notify any person responsible for maintaining a nuisance to abate the same, and in case of disobedience of said notice to bring an appropriate action for the purpose. The nuisances referred to are such nuisances as defined by section 9051, N.C.L., likewise quoted in full in the margin.[2]

[1] "Abating Nuisances, Action For.—Penalty for Official Neglect. § 1. Whenever, in any county of this state, the county commissioners of said county shall have knowledge, either by personal observation, complaint in writing, or other satisfactory evidence, that a nuisance exists within the limits of said county, as defined by section 3346 of the Compiled Laws of Nevada [§ 9051, post] it shall be the duty of said board of county commissioners to take immediate action by entering and recording an order in the minutes of said board, directing the district attorney to notify the person or persons responsible for such nuisance to abate the same, and in case the said notice is not obeyed within five days from and after such service, the said district attorney is hereby directed and empowered to bring action in a court of justice to enforce or abate the same, together with the recovery of damages and costs. Said action shall be under the control of the board of county commissioners in like manner as other suits to which the county is a party, and all necessary expenses incurred in conducting said action shall be paid out of the general fund of said county as other claims are paid. Failure on the part of either county commissioners or district attorney to enforce the provisions of this act shall work forfeiture of office."

[2] "Nuisance Defined.—Abatement Of.—Actions Instituted, By Whom. § 562. Anything which is injurious to health, or indecent and offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action

The complaint in the action sets forth as an exhibit a written complaint filed with the board of county commissioners signed by B. H. Caples, M. D., health officer and state director of the State Board of Health, which alleged in some detail that defendant was publicly operating said premises as a house of prostitution, employing therein some eleven prostitutes, with six maids, cook and a housekeeper as part of her organization, that she appropriated the earnings of the prostitutes, all of whom were alleged, on information and belief, to have been brought into the state with transportation furnished by the defendant, that the defendant was engaged in constructing additional quarters for the purpose of bringing into the state some five or six additional prostitutes and was making further provision for further enlargement of her business. The complaint filed in the district court alleged the filing of such complaint with the county commissioners, the making of an appropriate order by that board, the service of notice by the district attorney and the failure of the defendant to comply, all as required by section 2043. It also alleged in seven additional and separate causes of action (1) the violation of the provisions of N.C.L., section 10539 in that the defendant knowingly accepted money, without consideration, from the proceeds of prostitutes; (2) the violation of the provisions of section 10541 in that the defendant transported prostitutes into the state; (3) the violation of the provisions of section 10127, sub. 2, in that she received compensation for placing women in a house of prostitution; (4) that defendant violated subdivision 3 of said section by giving compensation to prostitutes; (5) that she violated subdivision 5 of said section by living with common prostitutes in said premises; (6) that she violated subdivision 6 of said section by decoying, enticing and

may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

inducing women to become inmates of said premises for said purpose; (7) that the operation of said premises for the purpose of prostitution, etc., annoys, injures, and endangers the safety, health and comfort of the citizens of the county and offends public decency, defined to be a public nuisance under the provisions of section 10244.

The additional allegations referred to as Nos. (1) to (7) above are embraced within causes of action numbered second to eighth, inclusive, of the complaint in the district court. In all such cases appropriate sections constitute violation of the provisions a misdemeanor punishable by fine and imprisonment. Although a considerable part of the briefs is devoted to a consideration of these sections, counsel for the respondent county frankly conceded in the oral argument that inasmuch as the procedure adopted was that authorized by section 2043 which, in turn, limited the abatement proceedings to the abatement of nuisances as defined by section 9051, the second to eighth causes of action need not be directly considered as supporting the injunctive order.

We are thus led to a consideration of N.C.L., sections 10193, 10194, and 10166. The last-named section makes it a misdemeanor to keep any disorderly house by which the peace, comfort or decency of the immediate neighborhood is habitually disturbed or to keep an inn in a disorderly manner. The facts appearing in the record do not bring the case within the contemplation of this section and it need not be considered further. The other two sections read respectively as follows

"§ 10193. Houses of Ill-Fame, Location of. § 245. It shall be unlawful for any owner, or agent of any owner, or any other person to keep any house of ill-fame, or to let or rent to any person whomsoever, for any length of time whatever, to be kept or used as a house of ill-fame, or resort for the purposes of prostitution, any house, room or structure situated within four hundred yards of any school house or school room used by any public or common school in the State of Nevada, or

within four hundred yards of any church edifice, building or structure erected for and used for devotional services or religious worship in this state."

"§ 10194.   Certain Property Not to be Rented for Hurdy House, or Prostitution.   § 246.   It shall be unlawful for any owner or agent of any owner or any other person to keep, let or rent for any length of time, or at all, any house fronting on the principal business street or thoroughfare of any of the towns of this state, for the purpose of prostitution or for the purpose of keeping any dance house or house commonly called a hurdy house, or house where wine, beer or spirituous liquors are sold or served by females or female waiters or attendants, or where females are used or employed to attract or solicit custom, nor shall any entrance or exit way to any house referred to in this section be made or used from the principal business street or thoroughfare of any of the towns of this state."

Opposing the position of the respondent county that the maintenance and operation of a house of prostitution is a nuisance both under the common law and under section 9051, appellant contends that sections 10193 and 10194, by outlawing houses of prostitution within 400 yards of a school or church or on the principal business street of a town "clearly and unequivocally   *   *   * repudiated the common law which made houses of prostitution unlawful wherever they might be located," and insists that "it must be concluded that such houses are lawful in this state, when located in an area not prohibited by law, and conducted in a manner not forbidden by law."

■   Nevada has by statute adopted the principles of the common law and has in a number of instances modified the common law by statutory enactment.   That this may be done by way of a constructive repeal of the common law (as in cases where a statute has revised the whole subject) or that it may be the result of "the clear

and unquestionable implication from legislative acts," [3] as maintained by appellant, we may concede to be true where such situations sufficiently appear. However, to sustain a justification of the particular acts under this theory, where such acts are not authorized by the express terms of the statute under which the justification is made, we should have to find the plainest and most necessary implication in the statute itself. This rule appears to be frankly admitted even in the authorities submitted by appellant.

■ The district court, in refusing to dissolve the temporary restraining order, refused to find in sections 10193 and 10194 such clear and unquestionable implication, or such plain and necessary implication as to warrant the conclusion that the outlawing of houses of prostitution within 400 yards of a school or church or on the main street of a town intended to declare that they were lawful in other areas. We are satisfied that the district court was correct in thus rejecting the defendant's construction of these sections.

■ The maintenance and operation of the house of prostitution in question being a nuisance under the common law and being within the definition of a nuisance as found in N.C.L., section 9051 as being something "which is injurious to health, or indecent and offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property" and not being authorized by statute, either expressly or by plain or clear or unequivocal or necessary implication, it was properly enjoined and restrained by the district court. See opinion by Mr. Chief Justice DUCKER, speaking for this court in Kelley v. Clark County, 61 Nev. 293, 127 P. 2d 221, 224, although in that case, which sustained abatement proceedings initiated under section 2043, the premises

---

[3] 39 Am.Jur. 483, Nuisances, § 206, n. 18; 46 C.J. 672, Nuisances, § 40, id. 674, § 41.

■

involved were within 400 yards of a church and declared to be unlawful under the provisions of section 10193. Despite this distinction, many of the expressions used by the chief justice are directly applicable to this case and support the views herein expressed.

Respondent phrases the question for our determination as follows: Does section 10193 "make lawful the operation of a house of prostitution located more than 400 yards from a public school house or church?" Respondent insists that the question would be more nearly correct phrased as follows: "Do the various statutory enactments of the Nevada legislature concerning prostitution and its conduct, constitute it a lawful activity when practiced in an area not prohibited by statute, or conducted in a manner not forbidden by a statute?" Respondent says that this leads directly to the following question: "Do such enactments of the Nevada legislature stand as a repudiation of the common law determination which declared such an activity unlawful and therefore a public nuisance?" Adopting respondent's two questions as those for our ultimate consideration, we must answer both of them in the negative. The nuisance resulting from the operation of a house of prostitution is aggravated by its location within 400 yards of a school or church, for which the legislature imposed an additional and criminal liability without limiting the right to the initiation of abatement proceedings under section 2043. In Kelley v. Clark County, supra, it said:

"The location of a house of prostitution within a short distanct of a church or school would seem to aggravate rather than mitigate its deleterious effect on the public welfare. Being a nuisance it falls within the reach of county authorities to abate it by prescribed civil action."

The penal statutes mentioned in this opinion clearly negative any implication that the legislature, by making it a penal offense to operate a house of prostitution within 400 yards of a school or church, intended so to

modify existing law as to declare it lawful when operated elsewhere. That it could do so, confining its regulation only to rules of conduct is beyond the question. See L'Hote v. City of New Orleans, 177 U.S. 587, 20 S.Ct. 788, 44 L.Ed. 899, a case cited by appellant.

We have carefully considered the other points and authorities presented by appellant but in view of the conclusions reached above do not find it necessary to discuss them.

The order denying the motion to dissolve the temporary restraining order and denying the motion to dismiss is affirmed.

EATHER, J., concurs.

HORSEY, C. J., did not participate.