JUDY KUBAN, dba JUDY'S RANCH, and LORRAINE HELMS, dba SHERI'S RANCH, Appellants, v. JOHN McGIMSEY, in His Capacity as District Attorney for Lincoln County; EDWARD M. ARNOLD, RALPH L. SMEATH and KENNETH D. LEE, in Their Capacity as Commissioners of Lincoln County; HAROLD J. WOODWORTH, in His Capacity as Sheriff of Lincoln County, Respondents.

No. 11663

January 24, 1980          605 P.2d 623

*Fleishman, Brown, Weston & Rohde,* A Professional Corporation, Beverly Hills, California, and *Alan B. Andrews,* Las Vegas, for Appellants.

*John S. McGimsey,* District Attorney, Lincoln County, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

In this appeal from an order denying plaintiff-appellants' complaint for declaratory, injunctive and compensatory relief, two main issues confront us. They are: (1) Whether Nevada's statutory enactments preclude certain counties from completely prohibiting prostitution; and (2) Whether, assuming such proscription is valid, it consitutes a taking of property without due process. We turn now to address them.

Between 1971 and 1977 the Lincoln County Board of Commissioners, through the enactment of various ordinances, defined and imposed restrictions on prostitution and regulated the number of brothels in the county. In November of 1976, a majority of Lincoln County voters expressed their approval of legalized prostitution. As a consequence of the number of applications for houses of prostitution and the difficulties of policing and of otherwise regulating brothels, the Lincoln County electorate, by initiative referendum on May 16, 1978, approved by nearly a 64 percent majority an ordinance which prohibited prostitution in the county.[1] Appellants had operated their brothels from 1970 and, until 1978, had expended large

---

[1]Ordinance No. 1978-1 provides:

Section 1. *Prostitution Defined; Prostitution Prohibited; Soliciting Prohibited:* It shall be unlawful, as an act of prostitution, for any person, within the county of Lincoln, State of Nevada, to engage in sexual intercourse, for any money or thing of value, with a person to whom he or she *is not married,* or to solicit a person, to whom he or she is not married to have sexual intercourse, for any money or thing of value, with the person so soliciting.

amounts of money on improving their establishments. Appellants had ceased operation as brothels as a result of the new ordinance. Under threat of arrest, the businesses are closed to all persons except for the business of selling alcoholic beverages.

Subsequent to the closure, this action against the enforcement of the new ordinance was commenced. In the trial court, as on appeal, appellants argued that the challenged ordinance was preempted by NRS 244.345(1), (8);[2] NRS 269.175, and that, even assuming the validity of the ordinance, it was unconstitutionally applied to them because of its failure to include a time period for the amortization of appellants' investment.

*1.  Legality of the Ordinance.*

Appellants contend that the State of Nevada has a comprehensive statutory scheme regarding prostitution which preempts an allegedly conflicting ordinance of Lincoln County proscribing prostitution. In the instant factual context, we cannot agree.

A county licensing board may not grant a license for a house of prostitution in counties with a population greater than 200,000. NRS 244.345(8). Lincoln County has a population substantially less than 200,000. Additionally, "[t]his provision, when read in conjunction with NRS 244.345(1), manifests a statutory licensing scheme for houses of prostitution outside of

---

[2]NRS 244.345(1) and (8) provides in part:

1.  Every person . . . wishing to engage in the business of conducting a billiard or pool hall, dancing hall, bowling alley, theater, soft-drink establishment, gambling game or device permitted by law, or other place of amusement, entertainment or recreation, outside of an incorporated city or incorporated town, shall:

(a) Make application by petition to the license board . . . for a county license of the kind desired. . . .

(b) File the application with the required license fee with the county license collector, who shall present the same to the license board at its next regular meeting. The board may refer the petition to the sheriff, who shall report upon the same at the following regular meeting of the board. The board shall then and there grant or refuse the license prayed for or enter such other order as is consistent with its regulations. . . . In unincorporated towns and cities governed under the provisions of chapter 269 of NRS, the license board shall have the exclusive power to license and regulate the businesses herein set forth.

. . . .

8.  In any county having a population of 200,000 or more, . . . the license board shall not grant any license to a petitioner for the purpose of operating a house of ill fame or repute or any other business employing any female for the purpose of prostitution.

incorporated cities and towns.'' Nye County v. Plankinton, 94 Nev. 739, 741, 587 P.2d 421, 423 (1978). The legislature has specifically provided that the board of county commissioners has the power to license, regulate or suppress brothels in unincorporated cities or towns. NRS 244.345(1)(b), NRS 269.175. Clearly, there is no legislative declaration that *voters* in a small county, or a county board, may not enact an ordinance totally banning houses of prostitution.

Appellants assert that this court's holding in *Plankinton* was that state law now permits the licensing of houses of prostitution and that the less populated counties are divested of the power to prohibit them. But that holding merely confirmed the fact that houses of prostitution were no longer nuisances *per se* in light of NRS 244.345(8) as the court had otherwise held in Cunningham v. Washoe County, 66 Nev. 60, 203 P.2d 611 (1949).

This is not an action by a political subdivision to abate a nuisance. *Cf.* Nye County v. Plankinton, 94 Nev. at 740, 587 P.2d at 422 (county board of commissioners unsuccessfully sought to eliminate one brothel under a nuisance *per se* theory). Indeed, here the electorate of the county, through the exercise of their prerogative to initiate county ordinances by initiative and referendum, have voted to ban all brothels. That the electorate has this power is without dispute.[3] With but one exception, the legislature appears to have reserved the total ban

---

[3] Although not argued, we deem it appropriate to discuss briefly the initiative referendum procedure of this state. The framers of the Nevada Constitution expressly reserved the power of the initiative and referendum to the people of each county or municipality in the state.

> The initiative and referendum powers provided for in this article are further reserved to the registered voters of each county and each municipality as to all local, special and municipal legislation of every kind in or for such county or municipality. In counties and municipalities initiative petitions may be instituted by a number of registered voters equal to 15 percent or more of the voters who voted at the last preceding general county or municipal election. Referendum petitions may be instituted by 10 percent or more of such voters.

Nev. Const. art. 19, § 4. Therefore, irrespective of the legislature, the people have reserved to themselves power to deal directly with matters which might otherwise be left to the legislature. Hunter v. Erickson, 393 U.S. 385, 392 (1969). Of course, a property owner can challenge a zoning restriction if the measure is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926). If the substantive result of a referendum is arbitrary and capricious, bearing no relation to the police power, then the fact that the voters wish it so would not save the restriction. Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 676 (1976). The situation presently before us is not one of a zoning action denigrating the use or depreciating the value of land but, rather, is an initiative and referendum which had as its objective the

question to the counties but demands licensing in counties where brothels are allowed.

Appellants contend that "the suppression of brothels is the exclusive concern of state government, except where the state expressly yields its power of suppression to local government." But in the case cited for this proposition, Kelley v. Clark County, 61 Nev. 293, 127 P.2d 221 (1942), this court only stated that the suppression of *nuisances* was one of the most important duties of government and *cities* cannot divest the state of all power to regulate them. The court added that a city could enact ordinances not inconsistent with state laws. *Id.* at 299, 127 P.2d at 223–24. The county in that case was responsible for enforcing state laws concerning abatement of nuisances and had jurisdiction throughout the county.

The legislative history of NRS 244.345(8) indicates that the regulation of brothels had historically been a matter of local concern. We recognize that community standards and mores may differ from one community to another and even from time to time in the same community and that the county governing body, or the local electorate, as here, may see fit to adopt, repeal or amend ordinances to meet prevailing or then contemporary conditions. *Cf.* Miller v. California, 413 U.S. 15, 24, 30–37 (1973) (applying contemporary community standards in area of obscenity). It is proper that the community most affected, either beneficially or adversely, have control over the area sought to be regulated. It is not clear from a reading of NRS 244.345 and 269.175 that the legislature intended to pre-empt the field of brothel regulation. Because NRS 244.345(1)–(7) only refers to licensing procedures and does not mandate that brothels be allowed in any county, and because we believe the regulation of brothels is a matter of local concern, we find that our legislature did not intend to deprive counties of the power to ban brothels completely.

Appellants argue that the reference in the last paragraph of NRS 244.345(1) to NRS 269.175 (allowing county licensing boards exclusive control over unincorporated_towns) implicitly means that there is no power to prohibit brothels elsewhere. Certainly, we must look to the "whole purpose and scope of

abolition of prostitution with the incidental consequences of dramatically reducing the profit-making power of the brothel operations. We believe that the measure in question has substantial relation to the public health, safety, morals and general welfare of Lincoln County and should be upheld. This substantially resolves the due process issue, as well. *See* discussion of due process *infra*.

the legislative scheme'' to determine whether the legislature intended to occupy the entire field. Lamb v. Mirin, 90 Nev. 329, 332–33, 526 P.2d 80, 82 (1974). *See* Ronnow v. City of Las Vegas, 57 Nev. 332, 65 P.2d 133 (1937). Although the legislature may elect to preempt the entire field, here there only appears to be a legislative intent to provide for the licensing of businesses and to prohibit brothels in counties with a population exceeding 200,000. In the instant case, there is no ''clear and unquestionable indication from legislative acts,'' Cunningham v. Washoe County, 66 Nev. at 64–65, 203 P.2d at 613, that the legislation was intended to occupy the entire field. *See* DeCanas v. Bica, 424 U.S. 351 (1976). Nor is there any clear implication that by the outlawing of brothels in larger counties, the legislature intended that they be necessarily lawful in other areas. Neither is the new ordinance in conflict with general laws. Nev. Const. art. 4, § 21. Here, even had the Lincoln County Board of Commissioners by ordinance and without voter approval completely banned prostitution, such ordinance would not have been inconsistent with the laws in the area. Kelley v. Clark County, 61 Nev. at 299, 127 P.2d at 223–24.

    *2. Due Process.*

Appellants next contend that the prohibition of their ''established businesses'' constitutes a deprivation of property without due process of law. We disagree. The fifth amendment to the United States Constitution provides that no person shall be deprived of property without due process, ''nor shall private property be taken for public use, without just compensation.'' U.S. Const. amend. V. *Accord,* Nev. Const. art. 1, § 8. Thus, it must be determined whether due process was afforded here and whether the ordinance constituted a taking for which compensation must be rendered.

Appellants do not explicate what process they believe is due except for a brief reference to ''concepts of fairness and principles of equity'' and that there must at least be a reasonable time allowed for the amortization of their investment. In order to satisfy due process, a statute must be reasonably related to a legitimate governmental interest. Ottenheimer v. Real Estate Division, 91 Nev. 338, 341–42, 535 P.2d 1284, 1285 (1975). In this instance, the ordinance is directed to the protection of the public morals, safety and welfare of the county. The nature of the businesses, coupled with the burden of policing and regulation upon the county, are alone sufficient reasons for limiting the number of such businesses or, as here, the complete proscription of the businesses. *See* Oueilhe v. Lovell, 93 Nev. 111, 560 P.2d 1348 (1977).

The next consideration is whether this ordinance constitutes a taking of property. A regulation of business which actually prohibits such business does not constitute a taking when, as here, such regulation promotes the health, safety, welfare or morals of the community and thus is a valid exercise of police powers.[4] Penn Central Transportation Co. v. New York City, 438 U.S. 104, 123-25 (1978); Goldblatt v. Hempstead, 369 U.S. 590, 592-93 (1962); Mugler v. Kansas, 123 U.S. 623, 668-69 (1887). As long as the police power is validly exercised, even previously lawful businesses may be prohibited. Penn Central Transportation Co. v. New York City, 438 U.S. at 126-27; Hadacheck v. Sebastian, 239 U.S. 394, 408-10 (1915); Stephens v. Bonding Association of Kentucky, 538 S.W.2d 580, 583 (Ky. 1976). *See* Oueilhe v. Lovell, 93 Nev. 111, 560 P.2d 1348 (1977). Here, the ordinance, although having a significantly adverse economic impact upon appellants' ventures, does not deprive appellants of all reasonable uses of their property.

"There has never been a time in the history of [prostitution] in this state when the operator or investor in such enterprises has been free from such occupational risks." Primm v. City of Reno, 70 Nev. 7, 14, 252 P.2d 835, 838 (1953). In the instant case, appellants' expectation to be free of governmental interference in their business operations was not reasonable in light of the history and nature of the prostitution industry in Nevada. The ordinance enacted here was not so arbitrary or capricious as to violate appellants' right to due process, *see* City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668 (1976); Southern Alameda Spanish Speaking Organization v. City of Union City, California, 424 F.2d 291 (9th Cir. 1970), and does not amount to a taking or invasion for which compensation is due.

Finally, appellants contend that if the ordinance is valid, there must at least be a period allowed for them to amortize their investment. Appellants fail to cite any relevant authority for this proposition and we have found none.

We affirm the order of the lower court.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring:

I concur in the result.

---

[4]For additional due process discussion, see note 3 *supra*.