PRINCESS SEA INDUSTRIES, INC., MEAD PUB-LISHING, INC., D/B/A LAS VEGAS PANARAMA; AND GALAXY COMPOSITION, INC., D/B/A LAS VEGAS MIRROR, APPELLANTS, *v.* STATE OF NEVADA, CLARK COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, BOARD OF CLARK COUNTY COMMISSIONERS, ROBERT H. BROAD-BENT, JACK R. PETITTI, THALIA DONDERO, R. J. RONZONE, MANUEL CORTEZ, SAMUEL BOWLER, AND DAVID CANTER, CONSTITUTING THE MEMBERS OF SAID BOARD; ROBERT MILLER, DISTRICT ATTORNEY, CLARK COUNTY, NEVADA, RICHARD BRYAN, ATTORNEY GENERAL, STATE OF NEVADA, AND JOHN McCARTHY, SHERIFF OF CLARK COUNTY, NEVADA, RESPONDENTS.

No. 12252

October 28, 1981                                          635 P.2d 281

*Smith, Maurer & Cremen,* Las Vegas, for Appellant Princess Sea Industries, Inc.; *Edward Bernstein,* Las Vegas, for Appellants Mead Publishing, Inc. and Galaxy Composition, Inc.

*Richard Bryan,* Attorney General, Carson City, and *Josh Landish,* Deputy Attorney General, Las Vegas, for Respondent State of Nevada; *Robert Miller,* District Attorney, Clark County, and *S. Mahlon Edwards,* Deputy District Attorney, Las Vegas, for Respondents Clark County, Board of County Commissioners, and Sheriff John McCarthy.

## OPINION

By the Court, MOWBRAY, J.:

Appellants, plaintiffs below, sought to have Assembly Bill 141, 1979 Nev. Stats., declared unconstitutional, and to obtain an injunction against enforcement of its provisions. The district court denied the relief requested. We affirm its judgment.

### THE FACTS

The appellants include the owner of a legal Nye County brothel, and two newspaper publishing concerns which have published and are willing to publish advertisements concerning the brothel. The legislation in question purports to prohibit advertising of any house of prostitution: "Anywhere in any county, city or town where prostitution is prohibited by local ordinance or where the licensing of a house of prostitution is prohibited by state statute." The enactment also undertakes to punish: "Any person, company, association or corporation who knowingly allows any owner, operator, agent or employee of a house of prostitution, or anyone acting on behalf of any such person, to advertise a house of prostitution in his place of business. . . ." Appellants have challenged these legislative provisions, contending that advertisements they wish to publish are commercial speech protected by the First Amendment to the United States Constitution.

### THE CONSTITUTIONALITY OF THE LEGISLATION

NRS 201.430 and 201.440, as amended, do prohibit a variety of commercial speech, *i.e.,* advertisements containing information concerning houses of prostitution, in certain areas within

the State of Nevada.[1] This Court's task is to determine whether the quoted legislative proscriptions must be declared unconstitutional, pursuant to principles heretofore articulated by the United States Supreme Court.

Expression concerning purely commercial transactions may fall within the ambit of the First Amendment's protection. Ohralik v. Ohio State Bar Assn., 436 U.S. 447, 455 (1978). Still, the United States Supreme Court recognizes a " 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Id.* at 455-56. Accordingly, commercial speech is afforded only, "a limited measure of protection commensurate with its subordinate position in the scale of First Amendment values." Furthermore, "modes of regulation that might be impermissible in the realm of non-commercial expression" are permitted. *Id.*

As this Court has said repeatedly, an "act of the legislature is presumed to be constitutional and should be so declared unless it appears to be clearly in contravention of constitutional principles." State ex rel. Tidvall v. District Court, 91 Nev. 520, 526, 539 P.2d 456 (1975). In cases of doubt, every possible presumption and intendment will be made in favor of constitutionality. "Courts will interfere only in cases of clear and unquestioned violation of fundamental rights." *Id.*, 91 Nev. at 526-527, 539 P.2d at 460; *see also* Anthony v. State of Nevada, 94 Nev. 337, 341, 580 P.2d 939 (1978); Damus v. County of Clark, 93 Nev. 512, 516, 569 P.2d 933 (1977); City of Las Vegas v. Ackerman, 85 Nev. 493, 499, 457 P.2d 525 (1969). The issue before us, then, is whether Assembly Bill 141 clearly contravenes constitutional principles heretofore established as to commercial speech.

Bigelow v. Virginia, 421 U.S. 809 (1975), is distinctly the Supreme Court case closest to the instant one on its facts. Still, that precedent is readily distinguishable. *Bigelow* involved an effort to bar advertising of a clinic offering legal abortions, *i.e.,* a medical service over which a state government has but narrowly circumscribed power. *See, e.g.,* Bellotti v. Baird, 428

---

[1]NRS 201.430(2) details certain specific information sought to be proscribed from distribution to the public, *i.e.*:

> Inclusion in any display, handbill or publication of the address, location or telephone number of a house of prostitution or of identification of a means of transportation to such a house, or of directions telling how to obtain any such information, constitutes prima facie evidence of advertising for the purposes of this section.

U.S. 132 (1976); Singleton v. Wulff, 428 U.S. 106 (1976); Connecticut v. Menillo, 423 U.S. 9 (1975); Doe v. Bolton, 410 U.S. 179 (1973); Roe v. Wade, 410 U.S. 113 (1973). Moreover, in *Bigelow* the high court explicitly stated that it was not deciding, "the precise extent to which the First Amendment permits regulation of advertising that is related to activities the State may legitimately regulate or even prohibit." 421 U.S. at 825.

Prostitution is an activity which the State of Nevada may choose either to regulate or to prohibit entirely. *See* NRS 244.345; *see also* Nye County v. Plankinton, 94 Nev. 739, 587 P.2d 421 (1978). Thus, at this time, absent further guidance from the Supreme Court, it appears neither necessary nor wise for this Court to construe either *Bigelow* or other commercial speech holdings as providing constitutional protection to advertising of prostitution. *Cf.* St. Pierre v. State, 92 Nev. 546, 548, 554 P.2d 1126 (1976).

In sum, the legislative enactment in question does not clearly contravene constitutional principles as thus far articulated by the United States Supreme Court. Other constitutional challenges are unmeritorious and require no discussion.

GUNDERSON, C. J., and BATJER, J., and BEKO, D. J.,[2] concur.

MANOUKIAN, J., concurring:

I concur in the result. However, I believe that those in the majority fail to sufficiently address the important First Amendment issue of this appeal. This Court has not had occasion to decide a "pure" First Amendment question since our holding in Viale v. Foley, 76 Nev. 149, 350 P.2d 721 (1960). In light of the many recent United States Supreme Court holdings bearing on this vital question, it is incumbent on this Court to re-examine and fully discuss the First Amendment when it is dispositive of the case at hand.

The primary question presented and the sole issue confronted by my brethren, is whether NRS 201.430 violates the First and Fourteenth Amendments because it substantially bans advertising by a brothel in certain public areas and anywhere in counties where prostitution is illegal. Additional issues raised for our consideration are: whether NRS 201.430 constitutes a taking of property without due process of law;

[2]The Governor designated the Honorable William P. Beko, Judge of the Fifth Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice. Nev. Const., art. 6, § 4.

and whether the proscriptions of NRS 201.430 are unconstitutionally vague and overbroad.

Princess Sea Industries, Inc., a Nevada corporation, (hereinafter Princess Sea) is the owner and operator of "The Chicken Ranch" brothel in Nye County, Nevada, situated approximately 65 miles northwest of Las Vegas, located in Clark County. The brothel appears to have complied fully with all licensing and regulatory requirements applicable to it by reason of its location in Nye County. Mead Publishing, Inc., d/b/a Las Vegas Panarama, (hereinafter Mead) and Galaxy Composition, Inc., d/b/a Las Vegas Mirror, (hereinafter Galaxy) are in the newspaper business, and there is evidence that Galaxy has in the past published advertising for houses of prostitution, including Princess Sea. The distribution and content of the papers particularly focus on the tourist industry of Clark County. Clark County has a population of more than 250,000 people; therefore, prostitution is unlawful according to state statute, NRS 244.345(8). Additionally, a Clark County ordinance proscribes prostitution and solicitation for purposes of prostitution. The record reflects that a substantial amount of the business of southern Nevada brothels is derived from Clark County.

In 1979, the state legislature enacted Assembly Bill No. 141, amending NRS 201.430 and NRS 201.440. The amendment limits commercial advertising of prostitution to areas of the state where prostitution may be permitted and proscribes it entirely in any county, city or town where prostitution is prohibited by local ordinance or state statute.[1] Thereafter, plaintiff-appellants sought declaratory and injunctive relief from enforcement of the amended statute. These three cases were consolidated and a hearing for injunction was held. The trial court denied the request for injunctive relief and declared the legislation constitutional.

---

[1]NRS 201.430 provides in part:

1. It is unlawful for any owner, operator, agent or employee of a house of prostitution, or anyone acting on behalf of any such person, to advertise any house of prostitution:

(a) In any public theater, on the public streets of any city or town, or on any public highway; or

(b) Anywhere in any county, city or town where prostitution is prohibited by local ordinance or where the licensing of a house of prostitution is prohibited by state statute.

2. Inclusion in any display, handbill or publication of the address, location or telephone number of a house of prostitution or of identification of a means of transportation to such a house, or of directions telling how to obtain any such information, constitutes prima facie evidence of advertising for the purposes of this section.

### 1. *First Amendment Rights*

Appellants contend that the advertising regulation scheme of the amended statutes violates their First Amendment rights to provide a "free flow of commercial information." Virginia Pharmacy Board v. Virginia Consumer Council, 425 U.S. 748, 764 (1976). Although Princess Sea is identified as the source of the advertisement, and Mead and Galaxy as past and would-be future carriers of the ads, I perceive no significant difference among them in terms of First Amendment protection. If the speech qualifies for protection under the First Amendment, as made applicable to the states through the due process clause of the Fourteenth Amendment (*see* Bigelow v. Virginia, 421 U.S. 809, 811 (1975); Schneider v. State, 308 U.S. 147, 160 (1939)), protection is afforded to the communication, to its source, and to its recipients. Virginia Pharmacy Board v. Virginia Consumer Council, 425 U.S. at 756.

It should be noted that recent Supreme Court holdings have brought commercial speech under the protective shield of the First Amendment. Central Hudson Gas v. Public Service Com'n of N.Y., 447 U.S. 557, 100 S.Ct. 2343 (1980) (regulated utilities' promotional advertising); Bigelow v. Virginia, 421 U.S. 809 (abortion); Virginia Pharmacy Board v. Virginia Consumer Council, 425 U.S. 748 (prescription drug prices); Bates v. State Bar of Arizona, 433 U.S. 350 (1977) (lawyer advertising of fees). *Contra,* Breard v. City of Alexandria, 341 U.S. 622 (1951); Valentine v. Chrestensen, 316 U.S. 52 (1942). However, as the Court recognized in Ohralik v. Ohio State Bar Association, 436 U.S. 447 (1978), and as my brethren cursorily point out, commercial speech is not afforded a parity with other constitutionally protected speech:

> We have not discarded the 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. To require a parity of constitutional protection for commercial speech and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression.

436 U.S. at 455-56.

Contrary to appellants' contention, *Ohralik* explicitly rejects a compelling state interest level of judicial review and instructs that the reviewing court "lower[ ] the level of appropriate judicial.scrutiny," *id.* at 457, when examining commercial advertisement. By doing so, the Court reaffirmed its holding in *Bigelow* that a balancing of the interests involved should be undertaken, "assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation." Bigelow v. Virginia, 421 U.S. at 826.

As noted by the majority, *Bigelow* is in certain respects similar to the case before us, although there are fundamental factual distinctions. In *Bigelow,* a Virginia newspaper editor was prosecuted for publishing an advertisement for a New York abortion clinic in a Virginia newspaper. A Virginia statute made the advertising of such services a misdemeanor. Balancing the competing interests involved, the Supreme Court declared the statute violative of the publisher's First Amendment rights. Appellants assert that the proposed advertisement in this case, like the advertisement in *Bigelow,* conveyed "information of potential interest and value to a diverse audience," *id.* at 822, to those with a "general curiosity about, or genuine interest in the subject matter or the law of another state and its development," *id.,* including those "readers seeking reform" in their own state. *Id.* Prostitution, like abortion, is not totally unnewsworthy. *Id.* Nevertheless, the advertisement of prostitution does not pertain to fundamental constitutional interests as does the advertisement of abortion, *see* Roe v. Wade, 410 U.S. 113 (1973); Doe v. Bolton, 410 U.S. 179 (1973). Furthermore, contrary to *Bigelow,* appellants' First Amendment interests do not coincide with constitutional interests of the general public.

The present case further differs from *Bigelow* in that no interstate regulation has been shown to exist. Nevada is not, "under the guise of exercising internal police powers, bar[ring] a citizen of another state from disseminating information about an activity that is legal in that State." Bigelow v. Virginia, 421 U.S. at 824-25.[2] NRS 201.430 deals with entirely intrastate regulation.

Even assuming that the advertisements in question are

---

[2]It is noteworthy that although New York at the time of the advertisements in *Bigelow* allowed profitmaking abortion referral agencies, it was not long before it enacted legislation proscribing that type of commercial advertisement. New York adopted laws 1971, c. 725 effective July 1, 1971, amended by Laws 1972, c. 17 § 1, now codified as Art. 45 of the State's Public Health Law (Supp. 1974-75).

expressions protected by the First Amendment, and that substantial individual and societal interests in the free flow of commercial information are present, these interests relate to an activity which has been afforded minimal constitutional protection and which the state may completely preclude. *See* NRS 201.295, *et seq.* and NRS 202.450, *et seq.* Thus, the state's interests implicated in support of this statute are particularly strong. As this Court stated in State *ex rel*. List v. AAA Auto Leasing, 93 Nev. 483, 486, 568 P.2d 1230, 1232 (1970):

> Within its police power, the legislature may regulate commercial and business affairs in order to promote the health, safety, morals and general welfare of its citizens and to protect its citizens from injurious activities. Viale v. Foley, 76 Nev. 149, 350 P.2d 721 (1960). Pursuant to this power, the legislature may regulate an otherwise legitimate business which, if conducted improperly, is detrimental to the public, *or it may prohibit a business activity which is essentially injurious to the public welfare,* provided such legislation is not prohibited by the Constitutions of the United States or Nevada. [Citations omitted.] (Emphasis added.)

*See also* George v. United States, 196 F.2d 445 (9th Cir. 1952).

In addition to the state's general interest in protecting the public in commercial transactions, Ohralik v. Ohio State Bar Association, 436 U.S. 460, and incidental to its police powers, the state has a special interest in maintaining an atmosphere of decency and sound morals, and therefore in counteracting the deleterious effect prostitution may have on the public welfare. *See* State *ex rel*. Grimes v. Board, 53 Nev. 364, 372-73, 1 P.2d 570, 572 (1930).[3] Moreover, the Supreme Court has left little doubt as to the probable validity of a statute such as the one in question when it stated: "We have no doubt that a newspaper constitutionally would be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes." Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S. 376, 388 (1973).

---

[3]In the absence of express legislative findings we will presume the existence of facts that would support the legislative judgment. Viale v. Foley, 76 Nev. at 154-55, 350 P.2d at 724. Nevertheless, here I note some of our cases reflecting the adverse consequences of solicitation for purposes of prostitution and prostitution. Mayes v. State, 95 Nev. 250, 591 P.2d 250 (1979) (thefts committed frequently by prostitutes after having sexual intercourse with victims); Sheriff v. Horner, 96 Nev. 312, 608 P.2d 1106 (1980) (living from earnings of a prostitute); Sheriff v. Hilliard, 96 Nev. 345, 608 P.2d 1111 (1980) (pandering); *see also* Comment, Preying on Playgrounds, the Sexploitation of Children in Pornography and Prostitution, 5 Pepperdine L. Rev. 809 (1978).

This state interest must be balanced against appellants' interest in advertising the brothel. The trial court found that the brothel is "not an entirely lawful activity." Even assuming that the maintenance of such a house is legal under the licensing scheme of NRS 244.345[4] as manifested by the continued inclusion of subsection 8,[5] such legality is confined to certain counties, including Nye. Relying on this legality, the appellants cite Virginia Pharmacy Board v. Virginia Consumer Council, 425 U.S. 748, which held that a state may not "completely suppress the dissemination of concededly truthful information about entirely lawful activity," *id.* at 773, even when that information could be categorized as commercial speech.

In the instant case, however, I perceive the advertisement as proposing no more than simply a commercial transaction, markedly different from advertising which contains factual material of clear "public interest." Bigelow v. Virginia, 421 U.S. at 822. Indeed, the speech at issue might be equated with a mere solicitation of patronage implicit in a trade name. *See* Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 895, n. 10 (1979).

Here, the respondents contend that the regulation is a mere time. place and manner restriction, a contention which I find rather persuasive. This issue need not be discussed; however, in view of the fact that the legislature has expressly provided that local governments have the power to license, regulate and *suppress* brothels in unincorporated cities or towns. NRS 244.345(1)(b), 269.175; *see* Kuban v. McGimsey, 96 Nev. 105, 110, 605 P.2d 623, 626 (1980). Nothing precludes the state from completely proscribing speech concerning this deleterious activity in Clark County, where prostitution is illegal. In addition, although the majority does not explicate, implicit in its

---

[4]NRS 244.345 reads in part:

1. Every natural person, firm, association of persons or corporation wishing to engage in the business of conducting a billiard or pool hall, dancing hall, bowling alley, theater, softdrink establishment, gambling game or device permitted by law, or other place of amusement, entertainment or recreation, outside of an incorporated city or incorporated town, must:

(a) Make application . . . to the license board of the county in which the business is to be engaged in, for a county license of the kind desired. . . .

(b) File that application with the required license fee with the county license collector. . . .

[5]NRS 244.345(8) provides:

8. In any county having a population of 250,000 or more, the license board shall not grant any license to a petitioner for the purpose of operating a house of ill fame or repute or any other business employing any person for the purpose of prostitution.

holding is the fact that the regulation before us directly advances the governmental interest asserted. It is plain that each appellant will suffer pecuniary loss, absent use of the printed media. Yet, this does not translate into a First Amendment right which is not subject to regulation. Moreover, Princess Sea is itself free to advertise where permitted to do so, utilizing those manners or means authorized by, or not precluded by, the challenged legislation. Princess Sea may also elect to advertise through the media outside the State of Nevada.

The legislature has the right, indeed the responsibility, to determine that community standards and mores and diverse social-economic circumstances may differ from one community to another, and it may see fit to adopt, as here, a regulation to meet prevailing conditions. *Cf.* Miller v. California, 413 U.S. 15 (1973) (applying contemporary community standards in areas of obscenity). The measure of constitutional protection to which certain expression is entitled depends in great part upon the content of the speeches. Central Hudson Gas v. Public Service Com'n of N.Y., 447 U.S. 557, 100 S.Ct. at 2350. The speech at hand is due little, if any, protection. It involves entertainment, not information or ideas.[6]

In balancing the state's interests with the interests of appellant publishers, brothel owner, and the public, I believe the state can suppress the type of advertising before this Court, no matter how truthful the information presented. Although the First Amendment affords commercial speech "a limited measure of protection," it is equally true that "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." Ohralik v. Ohio State Bar Assoc., 436 U.S. at 456. Here, I agree that the challenge to the legislation fails when balanced with the state's legitimate regulatory interests.

2. *Due Process*

Appellants' second contention is that the statutory scheme regulating advertising constitutes a taking of property without due process of law. This issue is not discussed by my brethren, who apparently consider it without merit. Whether relief under this theory is warranted requires a two-part analysis. First, it must be determined whether the right to advertise is a property interest, and second, whether the regulation of such advertisement constitutes a "taking."

---

[6]Moreover, some of the advertisements preserved in the record on appeal have the potential of enticing persons under 21 years of age to visit or become employed as prostitutes in contravention of NRS 201.300 and 201.360(1)(g). Also noteworthy is the fact that the ads refer to "out call service," a representation which I consider to be misleading.

Advertising itself is a legitimate business, United Interchange, Inc. v. Spellacy, 136 A.2d 801, 806 (Conn. 1957), subject to reasonable regulation. Central Outdoor Advertising Co. v. Evendale, 124 N.E.2d 189, 194 (Ohio 1954). It is also well settled that the right to engage in any lawful business or occupation carries with it the concomitant right to advertise. Merit Oil Co. v. Director of Div. of Necessaries of Life, 65 N.E.2d 529, 530 (Mass. 1946). Furthermore, the right to advertise services or products is a valuable property right, the denial of which may constitute a taking of property without due process of law. Serve Yourself Gasoline Stations Ass'n v. Brock, 249 P.2d 545, 548 (1952); Levy v. Pontiac, 49 N.W.2d 80, 82 (1951).

Next, in determining whether the statute's application would constitute a taking without due process (U.S. Const. Amend. V.; *accord* Nev. Const. art. 1 § 8), an examination of the enacted regulation must be undertaken to determine its propriety as an exercise of the legislature's police powers for the protection of public health, safety, morals, and general welfare. Merit Oil Co. v. Director of Div. of Necessaries of Life, 65 N.E.2d at 531. My examination of this aspect of appellants' claimed denial of their due process rights, is greatly influenced by the fact that statutes are generally presumed to be valid and it is the burden of appellants to demonstrate their unconstitutionality. Wilmeth v. State, 96 Nev. 403, 405, 610 P.2d 735, 737 (1980). Furthermore, if, as here, a statute was enacted incidental to the state's police powers, "it is presumed that the legislature intended to promote the public welfare." Viale v. Foley, 76 Nev. at 152, 350 P.2d at 722. Here, the nature of the business which is the source of the advertising, coupled with the encumbrances and liabilities explicated in my preceding discussion regarding appellants' First Amendment claims are alone sufficient to justify the advertising proscription and regulation.

Because I have determined that the legislation has a rational basis supporting its enactment, I must now ask whether the proscription and regulation constitutes an unwarranted taking of this property right. The leading Nevada case in this area is Viale v. Foley, 76 Nev. 149, 350 P.2d 721, wherein we held that advertising of hotel and motel rates is subject to legislative regulation. *Viale* indicates that when there is no absolute prohibition against all forms of advertising, "the statute must be construed as restrictive and regulatory of the manner and means of advertising . . . rather than an absolute prohibition against any kind of advertising [which] involves no absolute denial of a property right without due process of law." *Id.* at

152-53, 350 P.2d at 722-23. NRS 201.430 merely restricts brothel advertising to those counties where houses of prostitution may be licensed and prohibits such advertising only in those counties where houses of prostitution are forbidden by state statute, such as Clark County. In other areas of Nevada all forms and contents of brothel advertising remain unregulated. Thus, similar to the statutory limitation in *Viale,* the challenged statute is merely restrictive and regulatory of advertising. In my opinion, it involves no absolute denial of a property right without due process of law.

If a previously lawful business can be prohibited, *see Kuban,* commercial advertising by an existing business can be limited or precluded incidental to the state's police power, for the reasons I have indicated. Here, as in *Kuban,* although the challenged legislation has a "significantly adverse economic impact upon appellants' ventures," *id.,* at 112, 605 P.2d at 627, I believe that it does not unreasonably deprive appellants of any constitutionally protected property rights. *See Kuban, id.*

Appellants have failed to meet their burden of overcoming the statute's presumption of validity. I conclude, as does the majority, that this claim lacks merit.

3. *Vagueness and Overbreadth*

Appellants also contend that the words of the statute are vague. The language gives sufficient warning of the proscribed acts. Wilmeth v. State, 96 Nev. at 404, 610 P.2d at 737; Roth v. United States, 354 U.S. 476, 491 (1957).

In addition, appellants challenge the statute under the "overbreadth" doctrine derived from the First and Fourteenth Amendments. Of course, the majority has already determined that NRS 201.430 is not violative of Mead's and Galaxy's First Amendment rights. In addition, the Supreme Court has stated that "the justification for the overbreadth analysis applies weakly, if at all, in the ordinary commercial context. . . ." Bates v. State Bar of Arizona, 433 U.S. at 380. *See also,* Ohralik v. Ohio State Bar Assn., 436 U.S. at 462, n. 20. Because it remains relevant to distinguish between commercial and noncommercial speech for purposes of applying the overbreadth doctrine, *see Bates* at 380, and particularly on the facts of this case, I believe that the overbreadth doctrine has no application. I agree with the majority that the claim is without merit. ∎