280

Circuit Court of Appeals, Third Circuit.
Jan. 25, 1937.

Rehearing Denied March 23, 1937.

THOMPSON, Circuit Judge, dissenting.

Harold E. McCamey, Charles A. Woods, Jr., and Dickie, Robinson & McCamey, all of Pittsburgh, Pa., for appellants.

Wm. S. Moorhead, A. W. Henderson, and Moorhead & Knox, all of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below, the partnership J. Freudenheim & Sons brought suit against the receivers of the Pittsburgh Hotels Corporation to recover damages suffered by the alleged negligence of the defendant in failing to safely keep some $40,000 worth of its diamonds deposited with defendant by Sol J. Freudenheim, one of the partners, who was an alleged guest of the hotel. On trial, a verdict was had for the plaintiff for $41,893.13. Thereafter motion was made for a new trial, and pending a hearing thereof, defendants presented a petition as follows:

"That at the time of the trial of said case the law of the Commonwealth of Pennsylvania—more specifically the Act of April 22, 1905, P.L. 286, as amended by the Act of April 9, 1925, P.L. 221 (12 P.S. §§ 681, 682)—authorized the courts of the state to entertain motions for judgment upon the whole record, notwithstanding a verdict of a jury providing that the trial court had reserved or declined a point for binding instructions submitted at the proper time during the trial and providing also that all the evidence introduced at the trial be certified as part of the record. Notwithstanding the Conformity Act (28 U.S. C. § 724 [28 U.S.C.A. § 724]) the practice thus authorized by state law was thought not to be permissible in the Federal Courts sitting in Pennsylvania because of a decision of the U. S. Supreme Court in Slocum v. New York Life Insurance Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879 [Ann.Cas.1914D, 1029] wherein the practice was challenged as being in conflict with the Seventh Amendment to the Federal Constitution. By reason of this situation your petitioners, up to the present time, have not requested the court in the instant case to certify the evidence as a part of the record, neither have they presented a motion for judgment non obstante veredicto although, as indicated above, they presented points for binding instructions during the trial of the case in accordance with the Pennsylvania practice.

"That on June 3, 1935, the Supreme Court of the United States handed down an opinion in a case entitled Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636, wherein it modified somewhat the views theretofore expressed by it in the Slocum Case, the effect of which is believed to have eliminated, under certain circumstances, constitutional objections to motions for judgment non obstante veredicto in this court in accordance with the Pennsylvania practice."

Thereafter the court denied the motion, holding: "We cannot see that we have any authority so to amend the record as to state a fact which did not occur at the trial. The facts are that these four points were marked 'Refused'. We cannot make the record say that they were reserved for future consideration, when that is not the fact of the case," and on January 14, 1936 granted a new trial.

On January 20, 1936, counsel for plaintiff filed a stipulation as follows: "It is stipulated by counsel for the plaintiff that the said plaintiff has no objection to the Court's treating the defense point for binding instructions as if the same had been marked 'Reserved,' instead of 'Refused.' This stipulation is indicated · as a waiver of all objections which the plaintiff might have to the defendant's petition requesting that the record be so amended." Whereupon the court ordered: "It is hereby ordered (1) that defendants' motion so to amend the record filed herein on July 16, 1935, be, and the same is hereby granted and the record of the case is hereby amended accordingly; (2) that the order of court filed herein January 14, 1936, granting defendants' motion for a new trial is vacated and set aside; (3) the case is now set down for reargument on defendants' motion for a new trial and for judgment on points reserved in favor of the defendants."

On February 21, 1936, in an opinion then filed, the court held:

"Our conclusion on a review of all the evidence is that plaintiffs have failed to make out a case, and that judgment should now be entered in favor of the defendants on the whole case, notwithstanding the verdict, on the first and third points of law reserved.

"'First. Under the pleadings and all the evidence in this case your verdict must be in favor of the defendants.

"'Third. The uncontradicted evidence in this case shows that Sol J. Freudenheim was not a guest at the William Penn Hotel and did not intend to become a guest at the said Hotel on the two occasions when he deposited his briefcase alleged to have contained diamonds belonging to plaintiffs, namely on December 5, 1933, in the said deposit box which he procured at the said Hotel. There is no evidence that the said Sol J. Freudenheim paid any consideration for the use of the said safe deposit box. Depositing the said briefcase in the said safe deposit box, therefore, was a gratuitous bailment and the defendants cannot be held liable for the loss of the said briefcase or the contents thereof in the absence of gross negligence on their part. There has been no proof of gross negligence on the part of the defendants and your verdict in this case must, therefore, be in favor of the defendants,'" and entered judgment for the defendants. Whereupon plaintiffs took this appeal.

Without passing on the question whether under the facts recited the court had the power to enter a n. o. v. verdict for the defendant, we are of opinion the court, under the proofs in the case, was in error in not entering judgment for the plaintiff on the verdict rendered.

Turning to the pleadings, we note that clause 6 of the statement of claim alleged that: "Sol J. Freudenheim, one of the plaintiffs above named, having frequently prior thereto, in the conduct of the business of the plaintiffs been a guest in the William Penn Hotel in the City of Pittsburgh, Pennsylvania, entered and became a guest in said hotel having in his possession a large number of loose diamonds in a brief case; that at the request of said Sol J. Freudenheim the defendants by their agent, servant or employee assigned to said Sol J. Freudenheim a safe deposit box in the vault in the general office of said William Penn Hotel."

The affidavit of defense stated: "Defendants do not admit any of the averments of the Statement of Claim in this case except the facts admitted in paragraph I of this answer, and they demand proof of all said allegations in so far as they may be found to be material."

As to the question whether Sol J. Freudenheim was a guest at the hotel, the court charged: "And as to the request that we instruct the jury that they have the right to determine whether or not Sol

J. Freudenheim was a guest in the hotel, we say to the jury that if you find from the evidence that he came to the hotel and availed himself of the facilities of the hotel, he went to the barber shop, patronized the cigar store, and ate his dinner at the hotel, he would be a guest at the hotel, and you could properly so find, if you find that to be a fact that he did those things."

From the above it will be seen the general verdict must be held to have decided that question affirmatively for the plaintiffs and the verdict must be sustained unless the court, as a matter of law, should have held that he was not a guest at the hotel.

■ After a study of the proofs, we are of opinion that the court could not as a matter of law have decided Freudenheim was not a guest at the hotel, but that the determination of that fact was, in view of the proofs, a question to be decided by a jury.

Now the uncontradicted facts in the case are that Freudenheim was the traveling salesman of his diamond firm, and that, as shown by defendants' cross-examination, he was accustomed to visit Buffalo, Detroit, Cleveland, Toledo, Chicago, Indianapolis, Cincinnati, and Pittsburgh. That if trade justified, he stayed at hotels which had vaults for the deposit of valuables and he left his bag containing diamonds in their vaults. Prior to 1922–23, he had stopped at other hotels in Pittsburgh, but since then had stopped at the William Penn. Prior to 1930 he came to Pittsburgh eight or nine times a year and stayed at the William Penn two, three, or four days at a time, depending on trade conditions. In 1933 he was twice in Pittsburgh, received his mail at the hotel, but did not stay overnight. On every one of his trips to Pittsburgh he used the vault at the William Penn. On the morning of December 5, 1933, after visiting other cities, he arrived in Pittsburgh from Cincinnati before 7 a. m. After checking his personal bag at the railroad station, he went to the hotel. His proof was: "I intended to stay here as long as I could do business here." He arrived at the hotel around 7 o'clock, but the cashier's office, where the hotel had vaults, was not open, and the cashier, Schaller, had not arrived. His testimony was: "I waited around the lobby until about seven-thirty and around seven-thirty I went back to the cashier's office and I saw Mr. Schaller there and he greeted me. I told him I wanted a box, or he said, 'I suppose you want a box * * *' Whether he knew me by name, I don't know, but he knew me quite well." Continuing, the witness said: "Mr. Schaller came out of the cage, which is controlled by a wire door—grill—there, and he brought out a couple of keys and a tag. He tore off part of the tag and gave me the bottom of it, and he asked me to sign the upper part, which I did and returned it to him, and he gave me this stub bearing the same number as appears on the part bearing my signature which I gave to him. He then gave me two keys, which were attached to this little ring bearing a metal disc on which is noted the letter 'C.' He then inserted the key which he had in that box and turned it and withdrew it, and I inserted one of the keys which was attached to this ring and opened the box—opened the door—and I put my brief case in which my merchandise had been placed right inside that box. I closed the door and I went downstairs."

The testimony of Schaller, a witness of defendants, was virtually to the same effect, viz.:

"Q. What time did you come to the hotel on December 5, 1933? A. About 7:25 or 7:30 in the morning.

"Q. Just tell us briefly what happened? A. Well, when I come toward the house cashier's door there Mr. Freudenheim was standing there by the haberdasher window, with his case on the sill. He seen me coming, and I knew him, I knew what he wanted. I opened the front door, and he follow me in. I went directly into my house cashier's cage and I gets a key from 'C' board and also a stub to the vault marked 'C.' I turns around and puts the mark 'C' on the check and hands him the check, and he signs it."

It will be noted that the hotel had provided interlocking printed checks for its hotel vault service. One was the stub check given to Freudenheim, in form following:

| WILLIAM PENN HOTEL VAULT CHECK C 6306 | |
|---|---|
| Checked by | ———————— |
| Room | ———————— |

The other was a corresponding numeral, 6306, signed by Freudenheim and retained by the hotel. From these facts,

could an inference be reasonably drawn that Freudenheim was a guest of the hotel?

In the first place, we have the fact that Freudenheim was known to the hotel as a past guest and that there was the possibility of his lodging at the hotel if trade warranted such stay. There was, therefore, in the mind of both parties that the hotel would have Freudenheim as a guest. He was recognized by the cashier; inquiry was made whether he wanted a box; he was given the box; his merchandise was deposited; and the operation recognized by both parties by the corresponding vault checks with similar numbers. This was a service or accommodation which the hotel had extended before and Freudenheim had enjoyed before.

In 16 American & English Encyclopedia of Law, p. 516, it was held: "The sum of all these definitions seems to be that a guest is a transient person who resorts to, and is received at, an inn for the purpose of obtaining the accommodations which it purports to afford."

Now it is clear that vault service for valuables is a customary hotel accommodation and that it was the intention of both parties that Freudenheim should have that accommodation, and the relation of guest and hotel being once established, the doctrine in Wright v. Anderton, 1 K.B. 209, applies, viz.: "The responsibility of an innkeeper for the safety of a traveller's property begins at the moment when the relation of guest and host arises, and that relation arises as soon as the traveller enters the inn with the intention of using it as an inn, and is so received by the host. It does not matter that no food or lodging has been supplied or found up to the time of the loss. It is sufficient if the circumstances show an intention on the one hand to provide and on the other hand to accept such accommodation."

Moreover, later on, and before he left, Freudenheim, who was busy with his customers all morning and into the afternoon and took no lunch, did take his dinner in the general dining room of the hotel. It is true he did not take a room and register, but his omission to do so does not put him out of guest protection. See Moody v. Kenny, 153 La. 1007, 97 So. 21, 22, 29 A.L.R. 474, wherein it is said: "The fact that such person fails to register, or is not required to register, is immaterial; as the registration of guests at a hotel is no part of the contract between the hotel proprietor and the guest, but the purpose of a register is to keep track of the number of people in the house and to keep the books straight. A register is kept solely for the benefit and convenience of the hotel proprietor."

This is in accord with cases cited in 14 Ruling Case Law, 518, which says: "It is not necessary that a traveller shall register at an inn as a guest in order to become such, but it is sufficient if he visits the inn for the purpose of receiving entertainment and is entertained accordingly."

The jury having found a verdict in favor of the plaintiff, and the court having erred in holding as a matter of law that Freudenheim was not a guest, the judgment below is vacated, and the record is remanded, with instruction to the court to enter judgment on the verdict in favor of the plaintiffs.

THOMPSON, Circuit Judge (dissenting).

It may be conceded that there was a bailment of the brief case and its contents. The question for decision is whether the bailment was one for hire or a gratuitous bailment. The evidence is uncontradicted that the bailment was a gratuitous one; that the plaintiffs-appellants failed to show lack of ordinary care on the part of the hotel. The appellants have failed to sustain the burden of proving that Sol Freudenheim was a guest and that the hotel failed to use ordinary care. A scintilla of evidence is not sufficient, since a verdict may not rest on mere speculation and conjecture. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. The judgment should be affirmed.