V AND S RAILWAY, LLC, FKA V AND S RAILWAY, INC., APPELLANT, v. WHITE PINE COUNTY AND CITY OF ELY, RESPONDENTS.

No. 49351

July 16, 2009 211 P.3d 879

*Jones Vargas* and *R. Douglas Kurdziel, Kirk B. Lenhard*, and *Tiffany J. Swanis*, Las Vegas, for Appellant.

*Richard W. Sears*, District Attorney, White Pine County, for Respondents.

## OPINION

By the Court, SAITTA, J.:

NRS 334.030 facilitates the purchase of surplus governmental property by a governmental entity from another governmental entity. Specifically, NRS 334.030(2), (3), and (4) set forth special provisions for governmental entities entering into contracts for such purchases. NRS 334.030(5) suspends any law that is inconsistent with the other NRS 334.030 provisions.

In this appeal, we consider the scope of NRS 334.030. Here, there are two parties, one that is a governmental entity and one that is not, each contesting which of them may purchase surplus governmental property from another governmental entity. The property in question is a railroad that the Los Angeles Department of Water and Power (LADWP), a governmental entity, designated as surplus property. The LADWP sought bids on the railroad, and respondent City of Ely[2] offered to purchase the railroad for $750,000. The LADWP accepted Ely's offer, and Ely placed $250,000 in escrow. Nearly simultaneously, appellant V and S Railway, LLC (V & S Railway), a private company, sought to condemn the railroad pursuant to NRS 37.230, a statute that gives railroad companies that right. Subsequently, White Pine County and Ely brought a motion for summary judgment, claiming that NRS 334.030(5) precluded V & S Railway's ability to pursue its condemnation action under NRS 37.230, which the district court granted. The district court found that V & S Railway's condemnation action was barred because as soon as the LADWP designated the railroad as surplus governmental property, NRS 334.030(5) was triggered, thereby suspending NRS 37.230.

---

[2]Respondent White Pine County, another governmental entity, intervened at a later point in the proceedings.

On appeal, V & S Railway argues that the district court erred when it granted White Pine County and Ely's motion for summary judgment. Primarily, V & S Railway contends that the district court incorrectly found that, pursuant to NRS 334.030(5), NRS 334.030 superseded NRS 37.230.

We conclude that the district court incorrectly decided that NRS 334.030 was triggered by the LADWP designating the railroad as surplus governmental property. According to the plain language of NRS 334.030, the statute is triggered when governmental entities take steps demonstrating their intent to enter into a contract for the purchase and sale of surplus governmental property. NRS 334.030(5) then suspends any action brought pursuant to a law that is inconsistent with facilitating these purchases.

Therefore, we reverse and remand to the district court to determine whether the LADWP and Ely had taken steps showing their intent to enter into a contract for the purchase and sale of the railroad when V & S Railway brought its condemnation action pursuant to NRS 37.230. If the district court finds that the LADWP and Ely had taken the necessary actions to trigger NRS 334.030, then it should again conclude that NRS 334.030(5) precluded V & S Railway's ability to pursue its condemnation action.

## FACTUAL AND PROCEDURAL HISTORY

In 1987, the LADWP purchased the Northern Nevada Railway, a 128-mile railroad between Cobre, Nevada, and McGill Junction, Nevada. By 2002, the railroad was no longer used, and the LADWP designated the railroad as surplus property. Prior to offering the railroad for sale to the general public, the LADWP offered the railroad to governmental entities, including Ely.

On November 6, 2003, Ely offered to purchase the railroad for $750,000. The offer invited the LADWP to negotiate a purchase and sale agreement and proposed that Ely would place $250,000 in escrow to be applied toward the purchase. The escrow monies were designated as fully refundable. On December 9, 2003, the LADWP sent Ely a letter indicating, in pertinent part, that: (1) Ely needed to send the LADWP a payment in the amount of $250,000 in order to proceed with the purchase and sale agreement; (2) so long as there were no other interested parties during the 60-day notification period, the LADWP would proceed with negotiations with Ely; and (3) the $250,000 would be returned if the purchase and sale agreement was not finalized. On December 17, 2003, the LADWP received Ely's $250,000 deposit.

Two separate condemnation actions regarding the railroad were subsequently filed. One was filed by V & S Railway, which wanted to obtain the railroad under NRS 37.230. The other was filed by

Ely, when contract negotiations between itself and the LADWP soured.

## V & S Railway's condemnation action

The same day that the LADWP sent Ely the letter indicating its acceptance of Ely's offer, V & S Railway brought a condemnation action against the LADWP, seeking to acquire the railroad pursuant to NRS 37.230.[3] V & S Railway later moved for immediate occupancy of the railroad, a temporary restraining order,[4] and a preliminary injunction to prevent the LADWP from selling the railroad to Ely. White Pine County and Ely intervened in the action, arguing that they had an economic interest in the railroad. The district court denied V & S Railway's motions.

Ely and White Pine County together moved for, in part, summary judgment on V & S Railway's condemnation action.[5] Ely and White Pine County argued that NRS 334.030(5) precluded V & S Railway's ability to pursue its condemnation action under NRS 37.230. The district court initially denied the motion for summary judgment, stating that it was untimely, and granted a continuance for further discovery.

## Ely's condemnation action

Following the district court's denial of its summary judgment motion in V & S Railway's condemnation action, Ely filed a condemnation action against the LADWP, primarily arguing that the LADWP had failed to ratify the contract that they had negotiated and was attempting to increase the purchase price. In this action, Ely did not name V & S Railway as a party. Ely moved for immediate occupancy of the railroad, which the district court granted, contingent upon Ely's deposit of $500,000 with the district court. The $500,000 was added to the $250,000 Ely had already placed in escrow, totaling $750,000 paid toward acquiring the railroad.

The LADWP and Ely ultimately entered into an asset-purchase-and-settlement agreement. The agreement specifically noted that it was intended to resolve the condemnation action that Ely had filed

---

[3]The condemnation action was also brought against BHP Nevada Railway Company; White Pine Historical Railroad Foundation, Inc.; Robinson Mining Limited Partnership; Doe individuals; and Roe corporations or business entities. Because these parties do not raise issues on appeal, their involvement in the underlying lawsuits is not discussed herein.

[4]V & S Railway later conceded that the temporary restraining order was unnecessary.

[5]Ely moved for intervention before the district court denied V & S Railway's motion for immediate occupancy, but its intervention motion was not granted until after V & S Railway's motion was denied.

against the LADWP. According to the agreement, the purchase price was $1,500,000, minus the $750,000 already paid.

Pursuant to the settlement agreement between the LADWP and Ely, the district court entered an order approving the parties' stipulated settlement. The order stated that it resolved all issues among the parties related to the railroad's acquisition but noted that it was not admissible in any other case for any other purpose. The same day, the district court also entered a judgment of condemnation in Ely's favor and dismissed the case.

*Motion for summary judgment in V & S Railway's condemnation action*

Following the district court's entry of a judgment of condemnation in Ely's favor in its condemnation action, White Pine County and Ely supplemented their original motion for summary judgment in V & S Railway's condemnation action. The district court granted summary judgment in favor of White Pine County and Ely.

In granting summary judgment, the district court found no genuine issue of material fact as to whether V & S Railway was entitled to pursue its condemnation action. Further, the district court found that White Pine County and Ely were entitled to judgment as a matter of law because NRS 334.030(5) suspends NRS 37.230 and any other statutes that interfere with a governmental entity purchasing surplus property from another governmental entity.

The district court stated that NRS 334.030 was triggered when the LADWP, itself a governmental entity, designated the railroad as surplus property. The district court noted that NRS 334.030(5) states that any provision of law that is inconsistent with NRS 334.030 is suspended. Thus, any action brought pursuant to NRS 37.230, or any statute that would interfere with a governmental entity's purchase of surplus property from another governmental entity, was superseded by the LADWP designating the railroad as surplus. Further, the district court stated that V & S Railway's argument that, by purchasing the railroad Ely was merely stepping into the LADWP's shoes in its condemnation action, failed because it was contrary to NRS 334.030. Accordingly, the district court granted summary judgment, finding that White Pine County and Ely were entitled to judgment as a matter of law. V & S Railway has appealed from that order.

## DISCUSSION

*Standard of review*

"This court reviews a district court's grant of summary judgment de novo." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d

1026, 1029 (2005). Summary judgment is only appropriate where the evidence does not present any genuine issues of material fact and the law requires judgment for the moving party. *Id.* In reviewing a district court's decision to grant or deny summary judgment, this court construes the factual basis for the decision in favor of the non-moving party. *Id.*

### Scope of NRS 334.030

"This court reviews issues of statutory construction de novo." *Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 641, 81 P.3d 532, 534 (2003). In Nevada, "words in a statute should be given their plain meaning unless this violates the spirit of the act." *McKay v. Bd. of Supervisors*, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). "Where a statute is clear on its face, a court may not go beyond the language of the statute in determining the [L]egislature's intent." *Id.* A statute must be construed as to " 'give meaning to all of [its] parts and language, and this court will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.' " *Harris Assocs.*, 119 Nev. at 642, 81 P.3d at 534 (quoting *Coast Hotels v. State, Labor Comm'n*, 117 Nev. 835, 841, 34 P.3d 546, 550 (2001)). Further, a statute should not be read in a manner that renders a part of a statute meaningless or produces an absurd or unreasonable result. *Id.*

NRS 334.030 facilitates the purchase of surplus governmental property by governmental entities. These transactions are eased by the provisions in NRS 334.030 that allow governmental entities to circumvent other statutory proceedings.[6] *See* NRS 334.030(2), (5). By looking at the plain meaning of the statute's words, we conclude that the statute is triggered by two governmental entities taking steps demonstrating their intent to enter into a contract for the purchase and sale of surplus governmental property. NRS 334.030(2)-(4). Specifically, NRS 334.030(2) states that "[a]ny governmental entity may *enter* into any *contract* with any other governmental entity for the purchase of any . . . property." (Emphases added.) The plain meaning of "enter into" is "to participate in; engage in." *Random*

---

[6]In its entirety, NRS 334.030 states:

 1. The purpose of this section is to permit any governmental entity to take full advantage of the available surplus properties of any other governmental entity.

 2. Any governmental entity may enter into any contract with any other governmental entity for the purchase of any equipment, supplies, materials or other property, real or personal, without regard to provisions of law which require:

*House Webster's College Dictionary* 435 (2d ed. 1997). Thus, NRS 334.030(2) clearly contemplates that the relevant act for the statute's implication is when governmental entities begin to participate in or engage in the steps necessary to form a contract. NRS 334.030(3) goes on to state that in *making* the contract, governmental entities are authorized to accept statutory conditions as part of the contract. Accordingly, the statute's words demonstrate that the Legislature intended the statute to be triggered when the entities took steps toward entering into a contract for the purchase of surplus governmental property. Finally, as further evidence that the statute does not require the actual formation of a contract, NRS 334.030(4) discusses the bidding process. As the bidding process necessarily precedes the contract being formed, the language of NRS 334.030(4) indicates that the statute applies as soon as entities begin engaging in steps that show their intent to form a contract.

NRS 334.030(5) is central to resolution of this case. The district court primarily relied upon this provision when it found that V & S Railway was barred from pursuing its condemnation action under NRS 37.230. NRS 334.030(5) suspends *any* portion of *any* law that is inconsistent with allowing governmental entities to take full advantage of purchasing surplus property from other governmental entities. Once NRS 334.030 is triggered, no other action may interfere with the surplus property purchase.[7]

Further, V & S Railway's argument that such a reading would render NRS 334.030(2) through (4) mere surplusage is not persua-

---

(a) The posting of notices or public advertising for bids or of expenditures.

(b) The inviting or receiving of competitive bids.

(c) The delivery of purchases before payment, and without regard to any provision of law which would, if observed, defeat the purpose of this section.

3. In making any such contract or purchase the purchaser is authorized to accept any condition imposed pursuant to federal, state or local law as a part of the contract.

4. The governing body or executive authority, as the case may be, of any governmental entity may designate by appropriate resolution or order any officeholder or employee of its own to enter a bid or bids in its behalf at any sale of any equipment, supplies, material or other personal property, owned by any other governmental entity and may authorize that person to make any down payment or payment in full required in connection with such bidding.

5. Any provisions of any law, charter, ordinance, resolution, by-laws, rule or regulation which are inconsistent with the provisions of this section are suspended to the extent such provisions are inconsistent herewith.

[7]We note that legislative history supports our conclusion that the plain meaning of NRS 334.030(5) is that the provision suspends any law inconsistent with

sive. Applying the plain meaning of NRS 334.030(5) does not render any other section of NRS 334.030 nugatory because the provisions of NRS 334.030 do not contradict each other. Each provision is written in furtherance of the statute's intent: facilitating the purchase and sale of surplus property between governmental entities. NRS 334.030(1) states the statute's purpose; NRS 334.030(2) permits governmental entities to circumvent certain provisions of the law that might otherwise hinder their surplus property transactions; NRS 334.030(3) allows the purchasing governmental entities to accept any contractual condition imposed pursuant to law; and NRS 334.030(4) gives governmental entities the authority to designate an agent to enter bids and make payments on its behalf when purchasing surplus governmental property. Therefore, because NRS 334.030(1) through (4) promote the purpose of NRS 334.030 and are thus not inconsistent with each other, NRS 334.030(5) does not suspend any of them.

Based upon the plain meaning of NRS 334.030, we conclude that condemnation actions like V & S Railway's are suspended pursuant to NRS 334.030(5) once two governmental entities take steps demonstrating their intent to enter into a contract for the purchase and sale of surplus governmental property. While NRS 37.230 gives authority to ''[a]ny company incorporated under the laws of this state, or constructing or operating a railway in this state,'' to acquire property for use as a railroad by condemnation, allowing a private entity to condemn surplus governmental property once two governmental entities have taken steps toward the formation of a contract for that property's sale is contrary to NRS 334.030(1)'s stated purpose. NRS 334.030(5) suspends a private entity's ability to condemn surplus governmental property once governmental entities have demonstrated their intent to enter into a contract for that property's sale.

We conclude that NRS 334.030 does not support the district court's finding that the LADWP's designation of the railroad as surplus governmental property triggered NRS 334.030. Rather, as noted above, NRS 334.030 is triggered when governmental entities take steps showing their intent to enter into a contract for the purchase and sale of surplus governmental property. Therefore, on remand, the district court must determine whether the LADWP and Ely had already taken such steps when V & S Railway brought its condem-

---

the statute. When the statute was originally adopted in 1945, its purpose was to ''permit state and local governmental units to take full advantage of available federal surplus properties.'' 1945 Nev. Stat., ch. 43, § 3, at 53. In 1979, the statute was amended to include any government-to-government purchase, as opposed to only purchases from the federal government. 1979 Nev. Stat., ch. 77, § 1, at 98-99. This amendment did not affect the language of subsection 5.

nation action.[8] If the district court concludes that the LADWP and Ely had taken the steps necessary to make NRS 334.030 applicable when V & S Railway brought its condemnation action under NRS 37.230, then the district court should once again conclude that NRS 334.030(5) barred V & S Railway's condemnation action. NRS 37.230 is inconsistent with allowing White Pine County and Ely to take full advantage of the LADWP's sale of the surplus governmental property. Moreover, if the district court finds that NRS 334.030(5) precludes V & S Railway's condemnation action, then White Pine County and Ely do not replace the LADWP in V & S Railway's condemnation action, as V & S Railway suggests. Such an interpretation would undermine the statute's express purpose of allowing governmental entities to take full advantage of available surplus governmental property.

Conversely, if the district court concludes that NRS 334.030 had not been triggered when V & S Railway brought its condemnation action, then the district court must reverse its grant of summary judgment in favor of White Pine County and Ely and permit V & S Railway to pursue its condemnation action against the LADWP. NRS 334.030 does not give governmental entities a priority right to acquire surplus governmental property absent prior evidence indicating their intent to enter into a contract for the purchase of such property.

Because the district court incorrectly based its conclusion on its determination that NRS 334.030 was triggered by the LADWP designating the railroad as surplus governmental property, we reverse the district court's order and remand this matter to the district court for proceedings consistent with this opinion.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, and GIBBONS, JJ., concur.

---

[8]Facts that the district court should consider in making this determination are: (1) on November 6, 2003, Ely offered to purchase the railroad; (2) on December 9, 2003, the LADWP sent Ely a letter indicating its tentative acceptance of Ely's offer; and (3) on December 17, 2003, the LADWP received Ely's $250,000 deposit.