**132 Nev., Advance Opinion 36**

IN THE SUPREME COURT OF THE STATE OF NEVADA

DR. JOEL SLADE,
Appellant,
vs.
CAESARS ENTERTAINMENT
CORPORATION; PARIS LAS VEGAS
OPERATING COMPANY, LLC, D/B/A
PARIS LAS VEGAS,
Respondents.

No. 62720

**FILED**

MAY 12 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

> Appeal from a district court order dismissing plaintiff's complaint. Eighth Judicial District Court, Clark County; Allan R. Earl, Judge.

> *Affirmed.*

Nersesian & Sankiewicz and Robert A. Nersesian and Thea Marie Sankiewicz, Las Vegas,
for Appellant.

Santoro Whitmire and James E. Whitmire and Jason D. Smith, Las Vegas,
for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

> In this appeal, we are asked to consider whether common-law principles referenced in NRS 463.0129(3)(a) permit gaming establishments to exclude from their premises any person for any reason.

SUPREME COURT
OF
NEVADA

(O) 1947A

6/30/16: Corrected per letter to publishers. CT

16-14889

We generally adopt the majority common-law rule permitting the exclusion of persons for any reason that is not discriminatory or otherwise unlawful.

## FACTS AND PROCEDURAL HISTORY

Respondent Caesars Entertainment Corporation owns and operates a number of casinos throughout the United States, including Harrah's Tunica Hotel and Casino in Tunica, Mississippi. In 2011, appellant Dr. Joel Slade received a letter from a representative of Harrah's Tunica notifying him that he had been evicted from that casino and that the eviction would be enforced at all Caesars-owned, -operated, or -managed properties. Dr. Slade was interested in attending a medical conference that was to take place at Paris Las Vegas Hotel and Casino, a property owned and operated by Caesars. Dr. Slade contacted Caesars' corporate headquarters in Nevada about attending the conference but was informed that his eviction from Caesars' properties would be enforced at Paris LV.

Dr. Slade then filed a complaint, alleging a breach of the duty of public access and seeking declaratory and injunctive relief. Dr. Slade does not challenge the casino's right to exclude for proper cause. Instead, Dr. Slade alleged that under the common law and NRS 463.0129(1)(e), Caesars could not exclude him without cause.[1] He further argued that the casino owed him a duty of reasonable access either as a purveyor of a public amusement or as an innkeeper. Caesars then filed a motion to dismiss the complaint for failure to state a claim upon which relief could

---

[1]It is unclear from the record or the briefs on appeal the reason Caesars evicted Dr. Slade from its properties. Neither party sought discovery on this issue.

be granted pursuant to NRCP 12(b)(5), arguing that it has the right to exclude Dr. Slade pursuant to NRS 463.0129(3)(a) and the common law. The district court granted Caesars' motion to dismiss. This appeal followed.

## DISCUSSION

This court reviews questions of statutory interpretation de novo. *V & S Ry., LLC v. White Pine Cty.*, 125 Nev. 233, 239, 211 P.3d 879, 882 (2009). When a statute's language is unambiguous, this court does not resort to the rules of construction and will give that language its plain meaning. *Id.* "A statute must be construed as to 'give meaning to all of [its] parts and language, and this court will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.'" *Id.* (alteration in original) (quoting *Harris Assocs. v. Clark Cty. Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (internal quotation omitted)). "Whenever possible, this court will interpret a rule or statute in harmony with other rules and statutes." *Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006) (internal quotations omitted).

NRS 463.0129 declares Nevada's public policy concerning gaming establishments. Pursuant to NRS 463.0129(1)(e), "all gaming establishments in this state must remain open to the general public and the access of the general public to gaming activities must not be restricted in any manner except as provided by the Legislature." However, the statute also provides that "[t]his section does not . . . [a]brogate or abridge any common-law right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the

establishment for any reason." NRS 463.0129(3)(a).[2] "'Gaming' . . . means to deal, operate, carry on, conduct, maintain or expose for play any game . . . or to operate an inter-casino linked system." NRS 463.0153. "'Establishment' means any premises wherein or whereon any gaming is done." NRS 463.0148.

Whether NRS 463.0129(3)(a) permits gaming establishments to exclude any person for any reason pursuant to common-law principles is an issue of first impression in Nevada.[3] Dr. Slade argues that the Legislature has codified a common-law duty to provide reasonable access to the patrons of gaming establishments in NRS 463.0129(1)(e). In

---

[2]Nevada's legislative history regarding NRS 463.0129(3) is sparse, with no discussion about how the Legislature viewed the common law or why it used the term "any common-law right" in subsection 3. It does appear that one reason the language was added to the statute in 1991 was to ensure that gaming establishments in Nevada maintained the right to evict card counters. *See* Hearing on S.B. 532 Before the Senate Comm. on Judiciary, 66th Leg. (Nev., June 28, 1991) (remarks by Senator Bill O'Donnell questioning whether "section 3b of the [statute's] amendment meant the management of a casino could ask a patron to leave if the management suspected card counting"); Hearing on S.B. 532 Before the Senate Comm. on Judiciary, 66th Leg. (Nev., June 29, 1991) (explaining that the amendment would allow gaming establishments to "evict cheaters").

[3]Caesars argues that this court has previously decided whether a person may be excluded from the premises of a casino for any reason. *See* *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 411-14, 23 P.3d 243, 248-50 (2001); *Spilotro v. State, ex rel. Nev. Gaming Comm'n*, 99 Nev. 187, 189, 661 P.2d 467, 468 (1983). However, these cases involved an alleged constitutional right to access, not a common-law right, and in both cases we held that the reason for the exclusion was not discriminatory and therefore valid, making them inapplicable here. *S.O.C.*, 117 Nev. at 413-14, 23 P.3d at 249-50; *Spilotro*, 99 Nev. at 194, 661 P.2d 467 at 471-72.

making his argument, Dr. Slade urges this court to read NRS 463.0129(1)(e) as requiring Caesars to provide him access to its Nevada establishments because he is a member of the general public. Caesars counters that NRS 463.0129(3)(a) preserves the common-law right to exclude any individual for any otherwise lawful, nondiscriminatory reason. The parties' arguments suggest that NRS 463.0129 presents competing rights to the general public and gaming establishments concerning access to a casino's premises. Therefore, we must first interpret the language in these statutory subsections and determine the common-law rule before reaching the merits of this appeal.

*Construction of NRS 463.0129*

The plain language of NRS 463.0129(1)(e) assures access to the general public to a gaming premises, except as provided by the Legislature. But the Legislature appears to have qualified that access by recognizing a common-law right of gaming establishments in NRS 463.0129(3)(a) to eject any person from the premises. In harmonizing NRS 463.0129(1)(e) and 3(a), we must determine the breadth of an owner's common-law right to evict patrons.

There is overwhelming authority recognizing the common-law right of a private owner of a public amusement to exclude *any person for any reason* from the premises. *See, e.g., Brooks v. Chicago Downs Ass'n, Inc.*, 791 F.2d 512, 513, 516 (7th Cir. 1986) ("find[ing] that Illinois follows the common law rule" in determining that a race track operator had the absolute right to exclude a patron for any reason); *Ziskis v. Kowalski*, 726 F. Supp. 902, 908 (D. Conn. 1989) ("The weight of the case law upholds the common law rule that owners of places of amusement, like theaters and racetracks, are permitted to exclude patrons without cause."); *Donovan v. Grand Victoria Casino & Resort, LP*, 934 N.E.2d 1111, 1112, 1115-16



(Ind. 2010) (following the majority rule in holding that the owner of a riverboat casino had a common-law right to exclude any person from its premises).[4]

A narrower interpretation of the common-law rule to exclude persons stems from the Supreme Court of New Jersey's decision in *Uston v. Resorts International Hotel, Inc.*, 445 A.2d 370 (N.J. 1982). In *Uston*, a casino banned a card counter from its premises based on his method of playing blackjack. *Id.* at 371. The court held that the exclusion was invalid because the controlling gaming authority "alone has the authority

---

[4]Dr. Slade argues that, pursuant to NRS 1.030, Nevada should not recognize the current majority position because the common law to be applied to innkeepers is that of England as it existed in either 1776, at the establishment of the Union, or in 1864 when Nevada became a state. We do not agree with his contention for three reasons. We first note that NRS 463.0129(3)(a) specifically provides that the common law to be applied is that which allows a gaming establishment to "eject any person from the premises of the establishment for any reason." Moreover, Dr. Slade does not cite to, and this court has not identified, any early cases determining a gaming establishment's common-law right to exclude. Additionally, the early common law does not appear to apply a uniform rule. Some early common-law cases did not allow a private owner of a public amusement to exclude any person for any reason, *see, e.g., Donnell v. State*, 48 Miss. 661, 681 (1873), while other cases did allow such exclusions, *see, e.g., Madden v. Queens Cty. Jockey Club, Inc.*, 72 N.E.2d 697, 698 (N.Y. 1947) ("At common law a person engaged in a public calling, such as innkeeper or common carrier, was held to be under a duty to the general public and was obliged to serve, without discrimination, all who sought service. . . . On the other hand, proprietors of private enterprises, such as places of amusement and resort, were under no such obligation, enjoying an absolute power to serve whom they pleased."). Finally, this court has previously determined that, "[d]espite NRS 1.030, courts may reject the common law where it is not applicable to local conditions." *Rupert v. Stienne*, 90 Nev. 397, 399, 528 P.2d 1013, 1014 (1974). Accordingly, we are not persuaded by the argument.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

to exclude patrons based upon their strategies for playing licensed casino games." *Id.* at 372. The court went on to conclude that the common-law right to exclude in New Jersey was "substantially limited by a competing common law right of reasonable access to public places." *Id.*

We decline to follow the more narrow position that a common-law right of reasonable access to public places limits a private owner's right to exclude because its restrictive articulation of the common law is inconsistent with the plain language of NRS 463.0129(3)(a). Thus, in harmonizing NRS 463.0129(1)(e) and NRS 463.0129(3)(a), we conclude that casino establishments are to be open to the *general public* but have the common-law right to exclude *any individual* from the premises pursuant to the majority common-law position.

We emphasize, however, the right to exclude is not without significant and important limitation. We further conclude that NRS 463.0129(3)(a) does not grant gaming establishments an unlimited right to exclude anyone for any reason as that common-law right can be abridged by other statutory provisions. For example, under NRS 651.070, "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of *any place of public accommodation*,[5] without discrimination or segregation on the ground of race, color, religion, national origin, disability, sexual

---

[5]NRS 651.050(3)(a), (b), and (d) define "'[p]lace of public accommodation'" as "[a]ny inn, hotel, motel or other establishment which provides lodging to transient guests," as well as restaurants, bars, and theaters. Because casinos combine several of the elements, we conclude that casinos are "'place[s] of public accommodation.'"



orientation, sex, gender identity or expression."[6] (Emphasis added.) This interpretation of a gaming establishment's right to exclude is consistent with other jurisdictions that recognize the majority common-law position. *See, e.g.*, *Brooks*, 791 F.2d at 513 ("[T]he operator of a horse race track has the absolute right to exclude a patron from the track premises for any reason, or no reason, except race, color, creed, national origin, or sex."); *Ziskis*, 726 F. Supp. at 905 (recognizing that the common-law rule was limited by a state law that "deals with public accommodations, including places of amusement, creat[ing] . . . a right not to be discriminated against on the basis of race, color, religion, or national origin"); *Madden*, 72 N.E.2d at 698 ("The common-law power of exclusion . . . continues until changed by legislative enactment. In this State, a statute explicitly covering 'race courses' limits the power by prohibiting discrimination on account of race, creed, color, or national origin."). Accordingly, we conclude that while gaming establishments generally have the right to exclude any person, the reason for exclusion must not be discriminatory or otherwise unlawful. We now turn our attention to whether Dr. Slade's exclusion was for an unlawful reason.

---

[6]In addition, the statutes governing Nevada's gaming industry are encompassed in NRS Chapter 463. NRS 463.151 regulates the "exclusion or ejection of certain persons from licensed establishments." Pursuant to NRS 463.151(3)(a) and (c), the State Gaming Control Board has the authority to determine who may be excluded and may consider, among other things, whether the person has a "[p]rior conviction of a crime" or a "[n]otorious or unsavory reputation which would adversely affect public confidence and trust that the gaming industry is free from criminal or corruptive elements."

*Dr. Slade failed to demonstrate that his exclusion was for an unlawful reason*

This court reviews a district court's order granting a motion to dismiss for failure to state a claim under "a rigorous, de novo standard of review." *Pack v. LaTourette*, 128 Nev. 264, 267, 277 P.3d 1246, 1248 (2012). A complaint should be dismissed for failure to state a claim "only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

Although it is unclear from the record why Caesars initially evicted Dr. Slade from its property in Mississippi and this question was not argued or considered below, it does appear that his exclusion from Caesars' Las Vegas properties was based on that prior eviction. Dr. Slade does not argue on appeal, nor did he litigate at district court, that he was excluded from Caesars' properties for an unlawful reason. In his complaint, Dr. Slade simply argued that he never acted "disorderly" on a Caesars property or "cause[d] injury to any company affiliated with Caesars" and alleged a breach of the duty of public access and sought declaratory and injunctive relief. Dr. Slade did not ask for discovery on the reason for his exclusion, which he undoubtedly would have been entitled to. Because Dr. Slade failed to demonstrate that his exclusion from Caesars' properties was for unlawful reasons, we conclude "beyond a doubt that [he] could prove no set of facts, which, if true, would entitle [him] to relief." *Id.*

*Innkeeper common law is not implicated here*

One of our dissenting colleagues opines, and Dr. Slade advances a similar argument on appeal, that gaming establishments, when acting as innkeepers, have a common-law duty to allow access to any

patron seeking lodging if there is not cause to exclude. We respectfully disagree. We do not believe that the Legislature intended that gaming establishments be subject to varying common-law duties. The plain meaning of the statutory definition for gaming establishment encompasses the entirety of the "premises wherein or whereon any gaming is done." NRS 463.0148; NRS 463.0153; *see also Premises, Black's Law Dictionary* (10th ed. 2014) (defining "premises" as a "building, along with its grounds"). Arbitrarily limiting a gaming establishment's premises to the nonhotel portions contradicts NRS 463.0148's plain meaning.

Further, the rule suggested by our colleague would result in district courts parsing out parts of a gaming establishment's premises to determine whether patrons may be excluded without cause or whether a reason for exclusion must be given. Such an inquiry would create an inconsistent application of the statutes because of the many ways a gaming establishment can be configured and the variety of reasons guests patronize hotel-casinos.

Moreover, NRS 463.0129(3)(a) specifically provides that the common-law right to exclude "any person from the premises of [a gaming] establishment for any reason" is not abridged. Had the Legislature intended that an innkeeper common-law rule be weighed against the right to exclude any person for any reason, in the context of gaming establishments, it would have provided as much in NRS 463.0129(3). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("The expression of one thing implies the exclusion of others.").

According to the dissent, because hotel-casinos in Las Vegas also offer amenities such as "convention centers, shopping malls,

restaurants, swimming pools, wedding halls, concert halls, nightclubs, bowling alleys, zoos, spas, and more," innkeeper common law may be implicated. But we cannot determine in any principled manner why innkeeper common law would apply to these communal spaces instead of public amusement common law. *See Uston v. Airport Casino, Inc.*, 564 F.2d 1216, 1217 (9th Cir. 1977) ("[T]hey were not acting in [an innkeeper] capacity in their dealings with [the plaintiff]. The relationship was . . . one of casino owner and prospective gambler. The policies upon which the innkeeper's special common law duties rested are not present in such a relationship."). Our dissenting colleague is also concerned that our holding creates a monopolistic policy toward hotel-casino convention centers, similar to that which originally prompted the innkeeper common law. However, as noted in the dissent, innkeeper common law was created "because inns were so far and few between that travelers found themselves at the mercy of the innkeeper," raising monopolistic concerns. Access to convention space in a city such as Las Vegas, where practically every large gaming establishment has sizeable meeting areas, resulting in fierce competition, in no way implicates the concerns expressed in the original innkeeper common-law rule.

For these reasons, we conclude that innkeeper common law is not implicated in this instance.

## CONCLUSION

For the reasons set forth above, we conclude that, pursuant to NRS 463.0129, gaming establishments generally have the right to exclude any person from their premises; however, the reason for exclusion must not be discriminatory or unlawful. Because Dr. Slade failed to plead or in

any way demonstrate that his exclusion from Caesars' properties was for unlawful reasons and thus could prove no set of facts, which, if true, would entitle him to relief, we further conclude that the district court did not err in granting Caesars' motion to dismiss pursuant to NRCP 12(b)(5).

_____, J.
Hardesty

We concur:

_____, C.J.
Parraguirre

_____, J.
Saitta

_____, J.
Gibbons

12

PICKERING, J., with whom DOUGLAS, J., agrees, dissenting:

The district court dismissed Slade's complaint under NRCP 12(b)(5) for failure to state a claim upon which relief can be granted. Nevada adheres to the traditional rule that an action may not be dismissed at the pleading stage "unless it appears to a certainty that the plaintiff could prove no set of facts that would entitle him or her to relief . . . drawing every inference in favor of the nonmoving party." *Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture, LLC*, 129 Nev., Adv. Op. 18, 300 P.3d 124, 128 (2013) (internal quotations omitted). "The test for determining whether the allegations of a complaint are sufficient to assert a claim for relief is whether the allegations give fair notice of the nature and basis of a legally sufficient claim and the relief requested." *Vacation Vill., Inc. v. Hitachi Am., Ltd.*, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994). This is not a difficult test to pass, and Slade's allegations that Caesars, as an innkeeper and convention host, violated the common law when it excluded him for no stated reason from all parts of all of its properties more than meet the mark. I also disagree with the proposition that a hotel and convention facility can exclude visitors on their say-so alone, with no reason given. For these reasons, I would reverse the district court's order of dismissal and remand, so the facts can be developed in discovery and the case narrowed or resolved by summary judgment or trial.

In his complaint, Slade alleges that he is a doctor who wanted to visit a Caesars property in Las Vegas for a medical convention—a non-gaming activity. Another Caesars' property, this one in Mississippi, had sent Slade an "eviction" letter, stating without explanation that he was excluded from *all parts* of *all* Caesars' properties in the United States. In

his complaint, Slade alleges: "As an innkeeper operating an inn in conjunction with a casino, defendants are bound by the common law obligations of an innkeeper to accept all suitable travelers, and the common law actually restricts the action (rather than allows the action) taken by the defendants." Further, in Slade's opposition to Caesars' motion to dismiss, Slade stated that he "would likely be staying at defendants' inn." These allegations and argument render dismissal inappropriate.

By statute, the Nevada Legislature has directed Nevada courts to follow the common law in deciding when, and under what circumstances, a property holding a gaming license can exclude or eject a person from its premises. NRS 463.0129(1)(e) states the general rule: "[A]ll gaming establishments in this state must remain open to the general public and the access of the general public to gaming activities must not be restricted in any manner except as provided by the Legislature." However, in addition to the general application of common law under NRS 1.030,[1] NRS 463.0129(3)(a) states: "This section does not . . . [a]brogate or abridge any common-law right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason." The question thus becomes one of determining the scope and extent of the common-law right of a gaming establishment to exclude a person from gaming activities or to eject a person from the premises.

---

[1]NRS 1.030 provides: "The common law of England, so far as it is not repugnant to or in conflict with the Constitution and laws of the United States, or the Constitution and laws of this State, shall be the rule of decision in all the courts of this State."

The common law differentiates between innkeepers and proprietors of places of public amusement in terms of their ability to exclude persons for any reason, or no reason. While the common law did "not confer[ ] any right of access to places of public amusement," it held that innkeepers, by virtue of the dependency their establishment induced in members of the traveling public, could not refuse service without good reason. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 571 (1995). "At common law a person engaged in a public calling, such as innkeeper or common carrier, was held to be under a duty to the general public and was obliged to serve, without discrimination, all who sought service. On the other hand, proprietors of private enterprises, such as places of amusement and resort, were under no such obligation, enjoying an absolute power to serve whom they please[ ]." *Madden v. Queens Cty. Jockey Club*, 72 N.E.2d 697, 698 (N.Y. 1947) (citations omitted).

The policies that led the common law to limit the right of an innkeeper to exclude a member of the traveling public still have force today. Originally, innkeepers had a duty to serve guests absent good cause to exclude because inns were so far and few between that travelers found themselves at the mercy of the innkeeper and were vulnerable to extortion from the innkeeper. *See* Bruce Wyman, *The Law of the Public Callings as a Solution of the Trust Problem*, 17 Harv. L. Rev. 156, 159 (1904). Thus, innkeepers were viewed as having a "virtual monopoly" over a market serving the essential needs of the traveling public. *Id.* at 158. A place of public amusement, by contrast, provided entertainment, not necessary shelter, and so the law accorded the proprietor more leeway. *See id.*

The majority correctly notes that, drawing on this common-law distinction, several courts have deemed gaming establishments, such as race tracks, to be places of public amusement. *See, e.g., Brooks v. Chi. Downs Ass'n, Inc.*, 791 F.2d 512, 516-17 (7th Cir. 1986); *Madden*, 72 N.E.2d at 698. But these cases did not involve properties like Caesars that have gaming and, in addition, offer vast convention and hotel space. From a common-law perspective, hotel-casino-convention-centers implicate both the innkeeper rule and the rule regarding places of public amusement, a distinction the majority rejects. Yet, it is a fact that hotel-casinos offer many amenities beyond gambling: hotel rooms, convention centers, shopping malls, restaurants, swimming pools, wedding halls, concert halls, nightclubs, bowling alleys, zoos, spas, and more. Neither this court nor any other has endorsed the proposition that the mere presence of a casino exempts a hotel/convention center from the common-law rule of inclusivity applicable to innkeepers. *See Spilotro v. State, ex rel. Nev. Gaming Comm'n*, 99 Nev. 187, 196, 661 P.2d 467, 473 (1983) (Gunderson, J., concurring) (emphasizing that the Nevada Gaming Commission's authority to exclude certain individuals from gaming establishments did not mean that: an "'excluded person' could not even enter the Union Plaza Hotel in Las Vegas en route to the railway station, which is situated within that hotel, [nor] lawfully attend political events on the non-gaming portion of a gaming licensee's premises, . . . nor pursue any other legitimate pursuits on the non-gaming portion of a gaming licensee's premises"; noting that such a holding would be deeply problematic, for it would mean that an "'excluded person' traveling by bus through Nevada could not even visit the lavatories in several of our

established bus stations, or eat at the lunch counters during rest stops, because those facilities are in buildings also occupied by casinos").

The majority dismisses this important common-law distinction and its public policy implications by relying solely on its statutory interpretation of NRS 463.0129(3)(a), arguing: "Had the Legislature intended that an innkeeper common-law rule be weighed against the right to exclude any person for any reason, in the context of gaming establishments, it would have provided as much in NRS 463.0129(3)." But, the same argument can apply to the majority's interpretation. Had the Legislature intended that the entire premises of a hotel-casino or any gaming establishment have the absolute statutory right to exclude any person for any reason, it would have provided as much in NRS 463.0129(3). However, the Legislature did not simply state that rule, as the majority seems to believe. Rather, the Legislature incorporated and preserved the common law in NRS 463.0129(3)(a), which requires a legal analysis into the common-law rights and duties of innkeepers versus places of public amusements.[2]

---

[2]The majority is construing NRS 463.0129(3)(a) as altering the common-law duties of innkeepers by applying the right to exclude for public amusements to the entire premises of a hotel-casino. I cannot reconcile this interpretation with established canons of statutory interpretation. *See First Fin. Bank v. Lane*, 130 Nev., Adv. Op. 96, 339 P.3d 1289, 1293 (2014) ("This court will not read a statute to abrogate the common law without clear legislative instruction to do so."); *Cunningham v. Washoe Cty.*, 66 Nev. 60, 65, 203 P.2d 611, 613 (1949) (requiring "the plainest and most necessary implication in the statute itself" for the modification of common law by statutory enactment "where such acts are not authorized by the express terms of the statute").

The majority also takes issue with the concept that innkeeper common law would apply to the many different facilities located within the hotel-casino that arguably invoke public amusement common-law rules. Besides common law, statutory authority provides that all the different facilities, such as restaurants, swimming pools, wedding halls, etc., are within the premises of innkeepers. *See* NRS 651.005 (defining "premises," under the section "Duties and Liabilities of Innkeepers," to include, but not exhaustively, "all buildings, improvements, equipment and facilities, including any parking lot, recreational facility or other land, used or maintained in connection with a hotel, inn, motel, motor court, boardinghouse or lodging house"). Moreover, under common law, places of public amusement that are located within an innkeeper's premises may be subject to the same common-law duties governing innkeepers. *See Odom v. E. Ave. Corp.*, 34 N.Y.S.2d 312, 316-17 (N.Y. Sup. Ct. 1942) (applying the common-law duties of innkeepers to a restaurant located within the hotel, concluding that the common law provides that a "guest has the implied right to the use of such facilities as the character of the inn will afford"); 43A C.J.S. *Inns, Hotels, and Eating Places* § 23 (2014) ("[A]n innkeeper is bound to provide a guest with such facilities as the character of the inn afford.").

But, even assuming that the common-law duties of innkeepers should not apply to the entire premises of a hotel-casino, the majority rejects the concept of "parsing out parts of a gaming establishment's premises." This rejection directly contradicts the common-law interpretation of mixed premises, which requires a factual analysis regarding whether the patron intended to stay at the inn. *See Uston v. Airport Casino, Inc.*, 564 F.2d 1216, 1217 (9th Cir. 1977) (recognizing that

the hotel-casino may be considered an innkeeper, but the patron was only challenging access to the casino for the opportunity to play blackjack, and thus, "[t]he relationship was not one of innkeeper and patron, but rather one of casino owner and prospective gambler"); *Freudenheim v. Eppley*, 88 F.2d 280, 283 (3d Cir. 1937) (vacating lower court's conclusion that plaintiff was not a guest as a matter of law after plaintiff frequented the restaurant inside the hotel, concluding that the determination of one's guest status is based on intent, which is a question of fact for the jury); *Alpaugh v. Wolverton*, 36 S.E.2d 906, 908-09 (Va. 1946) ("[W]here a hotel operator operates a restaurant for the accommodation both of its guests and of the public in general, he may be an innkeeper as to some of his patrons and a restaurateur as to others. . . . [T]he controlling factor in determining whether the relationship of innkeeper and guest has been established is the intent of the parties."); 40A Am. Jur. 2d *Hotels, Motels, Etc.* § 18 (2008) ("A person claiming to be a guest must have the intention to become a guest and be received in that capacity by the innkeeper. . . . In litigation, there may be a jury question whether an innkeeper understood that a person intended to occupy a room.").

Here, Slade alleged that Caesars violated the common-law duty of innkeepers and, drawing every inference in his favor, he sufficiently alleged that he intended to patronize the inn. Moreover, even if he only wanted to attend the convention, it is not clear that the public amusement rule, rather than the innkeeper rule, should apply. As Las Vegas continues to market itself as a convention-center destination, a policy that would allow a hotel-casino to become the exclusive venue for conventions, yet retain unfettered discretion to exclude persons who want to attend those conventions, invokes the same concerns that drove the

innkeeper common law—a theory based on the monopolistic nature of the inn.

The majority incorrectly interprets the monopolistic nature of convention centers, arguing that "practically every large gaming establishment has sizeable meeting areas, resulting in fierce competition, [which] in no way implicates the concerns expressed in the original innkeeper common-law rule." This interpretation fails to address the exclusivity of a particular convention. While venue-shopping, a business wishing to host a convention has many options, but once that business selects a particular venue, it becomes the exclusive venue for that convention. As is the case here, the medical convention Slade wished to attend was hosted by a Caesars property. After being excluded, Slade could not attend the same convention at another location because that particular Caesars' property was the exclusive venue for the convention. Thus, the concept of a virtual monopoly is arguably as present, if not more, for conventions than for innkeepers. But even assuming the public amusement rule, not the innkeeper rule, applies to the pure convention-goer, it is not possible to draw this much from the record below at this stage of the case, where, on the face of the pleadings, Slade alleges that he was invoking the common-law right not to be excluded by an innkeeper from the inn.

The majority correctly observes that, under NRS 651.070, Caesars cannot illegally discriminate against Slade or other prospective patrons on the basis of race or other protected status. But this statutory prohibition requires the excluded patron to plead and prove the illegal discrimination. The common law, by contrast, requires the innkeeper to give a reason for the exclusion, rather than rest on the right to exclude for

any reason, or no given reason at all. The difference is meaningful, as the common law recognized.

The record in this case is wholly undeveloped. We do not know, for example, why Caesars sent Slade the letter it did, or whether Slade could attend the medical convention without walking across the casino floor. Without more than the bare allegations in Slade's complaint, though, I cannot reconcile an absolute right to exclude for any reason or no reason at all to the entire premises of a hotel-casino with the common-law duty of innkeepers, which only allows exclusion for good cause. Thus, I would reverse the district court's dismissal of Slade's complaint and remand for further proceedings.

I dissent.

_____, J.
Pickering

I concur:

_____, J.
Douglas

CHERRY, J., dissenting:

I join in the dissent authored by Justice Pickering, but I write separately because I cannot support the majority's conclusion that a plaintiff bears the responsibility of proving, prior to conducting discovery, that a gaming and entertainment corporation has chosen to discriminate against him for an unlawful reason.[1]

The majority correctly commences with the plain language of the statute. NRS 463.0129(3)(a) certainly permits "a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason." The majority's opinion today, if not narrowly read, could be interpreted to say that a casino can exclude any person for any reason or for no reason at all, which is contrary to Nevada law.

This distinction is important here because in its majority opinion today, this court has precluded Dr. Slade from ascertaining why Caesars Entertainment excluded him from its properties. The reason for

---

[1]This matter came before the district court as an NRCP 12(b)(5) motion to dismiss. Given the procedural posture of the case, the court below was obligated to accept as true everything in the complaint as it existed at that time and draw all inferences in favor of the plaintiff. *Stubbs v. Strickland*, 129 Nev., Adv. Op. 15, 297 P.3d 326, 328-29 (2013). It does not appear that such consideration was given to appellant. Granting dismissal with nothing more than the complaint was error. Allowing some discovery on this issue might have provided significant information to appellant.

Dr. Slade's exclusion is crucial. Although the statute allows Caesars to exclude him for any reason, NRS 651.070 prevents "any place of public accommodation" from discriminating "on the ground of race, color, religion, national origin, disability, sexual orientation, sex, gender identity or expression."

This case is not the first time that this court or the United States Supreme Court has held that a right to exclude for any reason is not without its limits. In the arena of jury selection, for example, although an attorney may exercise any number of peremptory challenges to excuse a juror without cause, it is a long-standing principle that an attorney may not do so on the basis of race or gender. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *J.E.B. v. Alabama*, 511 U.S. 127, 130-31 (1994). More recently, the United States Court of Appeals for the Ninth Circuit extended this principle to exclusions on the basis of sexual orientation. *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 486 (9th Cir. 2014). In the aftermath of these cases, if a party alleges a violation, then that party is not required to prove it; rather, the burden shifts to the other party to proffer a nondiscriminatory reason for the dismissal.

The principles of *Batson*, *J.E.B.*, and *SmithKline* are no different here, which is why the Legislature enacted NRS 651.070. I do not believe Nevada law allows (or that the Nevada Legislature ever intended) for Caesars Entertainment, or any other gaming establishment, to engage in *potentially* unlawful discrimination simply because it chooses

not to give a reason for its actions.[2]  For these reasons, I would allow this case to proceed to discovery.[3]  Accordingly, I respectfully dissent.

_____, J.
Cherry

---

[2]Nothing in this dissent should be read as an accusation that Caesars Entertainment actually engaged in unlawful discrimination.  The point is that without discovery, we cannot be sure.

[3]The better practice would have been for the court *sua sponte* to require respondents to file a more definite statement rather than grant dismissal outright.

SUPREME COURT
OF
NEVADA

(O) 1947A